STATE OF NORTH CAROLINA v. MARION PRESTON GILLESPIE

No. 2PA07

(Filed 25 January 2008)

**Criminal Law— discovery—sanctions—trial court exceeded authority—punishment based on actions of nonparties**

The trial court in a first-degree murder case exceeded its authority under N.C.G.S. § 15A-910 when it sanctioned defendant by excluding the testimony of two of defendant's mental health experts, and defendant is entitled to a new trial, because: (1) although N.C.G.S. § 15A-910 authorizes a trial court to impose sanctions on the parties in addition to exercising the court's inherent contempt powers, nothing in the language of the statute indicates that this authority extends so far as to punish either the State or a criminal defendant for the actions of nonparties; and (2) the trial court based its decision to sanction defendant solely upon the conduct of defendant's expert witnesses, thus acting under a misapprehension of law that the actions of a nonparty in

STATE v. GILLESPIE

[362 N.C. 150 (2008)]

a criminal proceeding can trigger a trial court's authority under N.C.G.S. § 15A-910 to sanction a party.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 180 N.C. App. 514, 638 S.E.2d 481 (2006), awarding defendant a new trial after finding error in a judgment entered 8 December 2004 by Judge W. Erwin Spainhour in Superior Court, Rowan County. Heard in the Supreme Court 16 October 2007.

*Roy Cooper, Attorney General, by Norma S. Harrell, Special Deputy Attorney General, for the State-appellant.*

*James R. Glover for defendant-appellee.*

BRADY, Justice.

Defendant Marion Preston Gillespie was found guilty of the first-degree murder of Linda Faye Patterson Smith and sentenced to life imprisonment without parole. The sole issue before this Court is whether the trial court exceeded its authority under N.C.G.S. § 15A-910 in its order sanctioning defendant by excluding the testimony of two of defendant's mental health experts. We hold that it did and in so doing modify and affirm the decision of the Court of Appeals awarding defendant a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Murder

In the early morning hours of 15 June 2003, defendant approached Deputy Sheriff Bradley Bebber of the Rowan County Sheriff's Office as Deputy Bebber was walking from that office to a nearby parking lot. Defendant, who appeared to have blood on his shirt and jeans, informed Deputy Bebber that the blood was his girlfriend's. He further stated that he and his girlfriend, Linda Faye Patterson Smith, had been arguing about money at their shared residence in Cleveland, North Carolina, when Smith charged at defendant with a knife in her hand. Defendant then took the knife from her and "began cutting her with it," which he stated had likely caused her serious injury. He informed Deputy Bebber that Smith and the knife would probably be found in the bathroom of the residence.

Law enforcement was dispatched to the residence, wherein the deceased victim was discovered in the rear bathroom, lying on her

side in the bathtub. There was a large amount of blood in the bathtub and on the nearby walls, and a knife was discovered on the edge of the bathtub.

Defendant subsequently waived his *Miranda* rights and consented to a search of the residence and his vehicle. Additionally, he provided a statement to investigators, containing the following: During an argument which took place in the bathroom of their residence, the victim had threatened to have her brothers kill defendant. In response, defendant threatened to leave. The victim then tried to kill him with a knife that defendant had placed on the toilet after attempting to repair it. Defendant managed to wrest control of the knife from the victim, pushed her, and inadvertently cut her on the arm.

Defendant further stated that he had diabetes and was taking cancer medication. He indicated that he had taken his medicine between midnight and 1:00 a.m. on 15 June 2003, an unspecified amount of time before the altercation with the victim. Defendant was not sure whether the medication affected his memory of the incident.

On 23 June 2003, the Rowan County Grand Jury returned a true bill of indictment charging defendant with first-degree murder of Linda Faye Patterson Smith. Initially, the case was set to be tried capitally, but on 1 March 2004, the State elected to try the case noncapitally. On 21 June 2004, the trial court issued a scheduling order with the consent of both parties setting 29 November 2004 as the trial date.

## II.  Trial Court's Pre-trial Order Sanctioning Defendant

On 14 October 2004, pursuant to N.C.G.S. § 15A-959, defendant gave the State written notice of his mental health defense, stating his intent to raise defenses of insanity and diminished capacity at trial. On 21 October 2004, the trial court held a hearing to resolve discovery motions filed by both the State and defendant. The State moved for notice of defendant's intent to offer at trial any of a specific list of defenses, including insanity, mental infirmity, diminished capacity, and voluntary or involuntary intoxication. The State also moved that defendant provide, *inter alia,* specific information as to the nature and extent of a number of these defenses and discoverable information pertaining to any expert witness defendant reasonably expected to call at trial. The trial court entered an order allowing the State's motion and orally instructed defendant to comply by 15 November

**STATE v. GILLESPIE**

[362 N.C. 150 (2008)]

2004. However, this deadline does not appear in the written order later signed by the trial court and filed on 8 December 2004.

Also on 21 October 2004, the trial court allowed defendant's motion to order the State to turn over a number of discoverable items, including "exculpatory material from all doctors, social workers, law enforcement personnel, state's witnesses, or other persons or sources, which are available to the State." This order was similarly entered by the trial court with the directive that the State comply by 15 November 2004, which was reflected in a written order later signed by the trial court and filed on 8 December 2004. Finally, on 21 October 2004, the trial court issued an order committing defendant to Dorothea Dix Hospital, a provider under the Division of Mental Health, Developmental Disabilities, and Substance Abuse Services, within the North Carolina Department of Health and Human Services, for evaluation of his mental condition.

On 16 November 2004, the trial court allowed the State's motion for access to defendant's medical records. The following day, defendant filed a motion for continuance and on 23 November 2004, filed a supplemental motion for continuance on the bases that: (1) defense counsel continued to receive discovery documents from the district attorney; (2) neither the State nor defense counsel had received any reports from Dorothea Dix Hospital staff or from any other experts; and (3) defendant was still at Dorothea Dix Hospital but needed to be transported to Rowan County Detention Center so that he could meet with counsel in order to prepare his case for trial.

On 22 November 2004, Charles Vance, M.D., Ph.D., a forensic psychiatrist at Dorothea Dix Hospital, wrote a letter to the Rowan County Clerk of Court stating that "[t]he medical staff of the Forensic Psychiatry Division has completed their forensic evaluation and observation of [defendant] and found him to be capable to proceed to trial." However, neither Dr. Vance nor the hospital staff provided a report of defendant's mental status at the time of the offense, in part because the State had not received any mental health reports from defendant. On 23 November 2004, the State moved to prohibit defendant from presenting any mental health defense or, in the alternative, to require him to provide requested documentation to Dorothea Dix Hospital staff so that they could evaluate defendant's mental condition at the time of the offense.

On 29 November 2004, the day defendant's trial was set to begin, the trial court held a hearing on the State's and defendant's motions.

After hearing arguments from both sides, the trial court entered an order prohibiting defendant from introducing testimony from Nathan Strahl, M.D., Ph.D., a private practice psychiatrist and consultant associate to Duke University Medical Center, and from Jerry W. Noble, Ph.D., a private practice clinical psychologist and instructor for the Wake Forest University School of Medicine's department of psychiatry, concerning any mental health defense to be offered by defendant. Thereafter, the trial court heard arguments on defendant's motion to continue and then denied the motion.

### III.  Defendant's Conviction and Appeal

On 8 December 2004, the jury returned its verdict finding defendant guilty of first-degree murder. The trial court entered judgment accordingly and sentenced defendant to life imprisonment without parole.

Defendant appealed to the Court of Appeals, which held unanimously that the trial court abused its discretion when it precluded defendant from introducing the testimony of his mental health experts. The State filed a motion with this Court for a temporary stay, which was allowed on 8 January 2007, along with a petition for writ of supersedeas and a petition for discretionary review, both of which were allowed on 3 May 2007.

### ANALYSIS

We now consider whether, as a matter of law, the trial court exceeded its statutory authority under the North Carolina Criminal Procedure Act when it sanctioned defendant pursuant to N.C.G.S. § 15A-910. This statute provides in pertinent part:

> (a) If at any time during the course of the proceedings the court determines that a *party* has failed to comply with this Article or with an order issued pursuant to this Article, the court in addition to exercising its contempt powers may
>
> . . . .
>
> (3) Prohibit the party from introducing evidence not disclosed . . . .

N.C.G.S. § 15A-910(a)(3) (2005) (emphasis added). By its plain meaning, the statute ensures that in criminal proceedings, the trial court has the authority to require both the State and defendants to com-

ply with North Carolina's discovery statutes and any orders entered pursuant to those statutes. To this end, N.C.G.S. § 15A-910 authorizes a trial court to impose sanctions on the parties in addition to exercising the court's inherent contempt powers. However, nothing in the language of the statute indicates that this authority extends so far as to punish either the State or a criminal defendant for the actions of non-parties. For this reason, the record demonstrates that the trial court in this case exceeded its statutory authority to sanction defendant.

Conclusion of law number four of the trial court's order prohibiting defendant from introducing the expert testimony at issue reads in part:

> The defendant should not be permitted to compel the court to continue the case from the 29 November 2004 session because of the failure of the defendant to obey the discovery statutes and the Order of this court of 21 October 2004 and the intentional, inexcusable conduct of the defendant's mental health witnesses.

This conclusion of law is, at best, ambiguous as to whether defendant's compliance, or lack thereof, factored into the trial court's decision to impose its sanction. This ambiguity is resolved, however, by the transcript of the trial court's hearing on the State's motion:

> THE COURT: And I will prepare my own order. And of course, I'll be happy to have any further input anybody else wishes to. But the Court's going to find, basically, *that Doctor Strahl and Doctor Noble have violated the Court's order, violated the discovery statute.* And that pursuant to N.C.G.S. [§] 15A-910[(a)](3), that the Court finds that the defendant, *again, not through counsel, but through these physicians*, that is Doctor Strahl is a medical doctor, Doctor Noble is a clinical psychologist, not a medical doctor, *that those persons have failed to comply with the discovery statute, and/or—and/or with the orders of this Court issued pursuant to the statutes,* and the Court therefore prohibits the defendant from introducing evidence relating to a mental health or insanity defense, or whatever you described, whatever it's been described as.

(Emphasis added.) It is readily apparent from this portion of the transcript that the trial court based its decision to sanction defendant solely upon the conduct of defendant's expert witnesses, thus acting under a misapprehension of law that the actions of a non-party in a

criminal proceeding can trigger a trial court's authority under N.C.G.S. § 15A-910 to sanction a party.

The trial court therefore erred as a matter of law when it entered its order sanctioning defendant, and defendant is entitled to a new trial. In light of our holding, we believe it was unnecessary for the Court of Appeals to address conclusions of law numbers one through three in the trial court's order. Nor was it necessary for that court to address defendant's federal constitutional argument under *Taylor v. Illinois*, 484 U.S. 400 (1988). *See State v. Crabtree*, 286 N.C. 541, 543, 212 S.E.2d 103, 105 (1975) ("It is well established that appellate courts will not pass upon constitutional questions, even when properly presented if there is some other ground upon which the case can be decided . . . ." (citations omitted)).

For the reasons stated above, the opinion of the Court of Appeals granting defendant a new trial is modified and affirmed.

MODIFIED AND AFFIRMED.