NO. COA13-1084

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

STATE OF NORTH CAROLINA

v.                                  Mecklenburg County
                                    No. 11 CRS 230328
BRANDON MIKAL FOSTER,
        Defendant.

Appeal by defendant from judgment entered 11 October 2012 by Judge Linwood O. Foust in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 March 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Alesia M. Balshakova, for the State.*
>
> *Gilda C. Rodriguez for defendant-appellant.*

GEER, Judge.

Defendant Brandon Mikal Foster appeals his conviction of delivery of cocaine. Defendant argues on appeal that the trial court erred in refusing to instruct the jury on the defense of entrapment. Based on defendant's evidence that an undercover officer tricked defendant into believing that the officer was romantically interested in defendant in order to persuade defendant to obtain cocaine for him, that defendant had no predisposition to commit a drug offense such as delivering

cocaine, and that the criminal design originated solely with the officer, we hold that the trial court erred in failing to instruct the jury on the defense of entrapment.

The trial court, however, indicated that it was also denying the request for an instruction as a sanction under N.C. Gen. Stat. § 15A-910(a) for failure to provide "specific information as to the nature and extent of the defense" as required by N.C. Gen. Stat. § 15A-905(c)(1)(b) (2013). Because the trial court made no findings of fact to justify imposition of such a harsh sanction, and the State has not shown that it suffered any prejudice from the lack of detail in the notice filed eight months prior to trial, we hold that the trial court abused its discretion in precluding the use of the entrapment defense as a sanction. Consequently, defendant is entitled to a new trial.

<u>Facts</u>

The State's evidence tended to show the following facts. On 22 June 2011, Officer Thomas Wishon, Officer Daniel Bignall, and Detective Hefner of the Charlotte-Mecklenburg Police Department ("CMPD") were working undercover at Chasers, a male strip club in Charlotte, North Carolina, investigating a complaint of sexually-oriented business and narcotics violations. Defendant was working as a dancer at the club that

night, and there were only a few patrons at the club. Defendant, whose stage name was Thunder, and another dancer with the stage name Mercury approached the officers after they finished dancing. Mercury and defendant gave lap dances to Officer Bignall and Detective Hefner.

Officer Wishon engaged in small talk with defendant throughout the evening. Officer Wishon admitted that he tipped defendant and flirted, maintained eye contact, and joked with defendant. Towards the end of the night, Officer Wishon asked defendant if he had a "hookup" and indicated that he would like to buy some cocaine. Defendant stated that he had a "connect." Officer Wishon asked defendant for his phone number and told defendant that he was going to a friend's party but would be back after the party. Before leaving, Officer Wishon gave defendant a goodbye hug.

Later that night, Officer Wishon received three text messages from defendant. The first stated, "'You have to come back. You never got a lap dance. LOL.:)'" The second text stated, "'I can get what you wanted if you need it. Let me know quick.'" The third text stated, "'My friend needs to know what to get if your [sic] still wanting that.'" Officer Wishon did not respond to these text messages or return to the nightclub that night.

Officer Wishon did not text defendant until 29 June 2011, when he asked defendant if he was able to "hook him up." Officer Wishon and defendant exchanged several text messages discussing the details of the deal. They arranged for Officer Wishon to go to Chasers the following day to make the purchase.

The next day, 30 June 2011, Officer Wishon went to Chasers where he and other undercover officers played pool with defendant until defendant's "source" arrived. When defendant's source, later identified as Paul Peterson, walked in, defendant said to Officer Wishon: "Oh. He's here. Let me get your money." Officer Wishon handed defendant $185.00 and watched defendant follow Mr. Peterson into the bathroom. When defendant returned, he had a plastic baggy of cocaine tucked into his underwear on his hip. He asked Officer Wishon to be "frisky" with him. Officer Wishon told defendant that he was making him uncomfortable, but he, nevertheless, retrieved the plastic baggy of cocaine from defendant's hip. Shortly thereafter, defendant was arrested.

After defendant was read his rights, he agreed to talk with Officer Stephanie White of the CMPD. Defendant told Officer White that he met Mr. Peterson in the bathroom, took the $185.00 given to him by Officer Wishon and exchanged it for the cocaine, put the cocaine in his underwear and Officer Wishon retrieved

it. Defendant also told Officer White that Officer Wishon had offered him $100.00 to broker the drug deal. Officer White testified that, generally, undercover officers will only offer someone a cigarette or up to $5.00 at most to broker a drug deal and that defendant's claim that he was offered $100.00 was a lie.

On 11 July 2011, defendant was indicted for sale of a controlled substance, possession with intent to sell or deliver a controlled substance, and delivery of a controlled substance. On 2 February 2012, defendant filed a notice of an intent to assert the defense of entrapment. The notice stated that "undercover CMPD Officer Wishon, acting on behalf of Charlotte Mecklenburg Police Department induced Brandon M. Foster to obtain cocaine, a crime not contemplated by Brandon M. Foster."

At a pretrial hearing on 8 October 2012, the State made a motion in limine to bar defendant from asserting the defense of entrapment on the grounds that the notice did not "contain specific information as to the nature and the extent of this defense" as required by N.C. Gen. Stat. § 15A-905(c). The trial court initially denied the State's motion and then asked defendant to describe more specifically what constituted entrapment in this case. After defendant gave a proffer of the evidence he intended to present to support the defense, the

trial court again denied the State's motion. The trial began the following day.

Defendant testified in his own defense on the second day of trial. He testified that on the night of 22 June 2011, he believed that Officer Wishon was interested in him. Officer Wishon initiated a conversation with defendant by asking him if he was single and asking other personal information such as what he liked to do besides dancing. Defendant told Officer Wishon that he was in school and that he danced to pay the bills. He was intrigued by Officer Wishon, noting that Officer Wishon "never mentioned the fact that I was sitting there in boy shorts or that I am half naked" and instead kept the conversation intellectual and sincere.

By the end of the night, defendant had given Officer Wishon his real name and telephone number, information that he normally did not give guests at the club. At one point, defendant commented that he thought Officer Wishon liked Mercury. Officer Wishon responded that he was into defendant and that is why he wanted defendant's number and not Mercury's. When Officer Wishon left, he gave defendant a goodbye hug.

At one point in the night, after having a one-on-one conversation with defendant, Officer Wishon asked both defendant and Mercury about getting "straight," which is street language

for cocaine. Defendant asked "[w]hat are you talking about?" Officer Wishon clarified that he was referring to cocaine. Defendant stated that he did not do drugs. However, both defendant and Mercury told Officer Wishon that they would ask around for him.

Defendant testified that he did ask around, but did not find anything that night. He did not speak to Officer Wishon about drugs again before the officers left. Although defendant texted Officer Wishon later about the lap dances, he denied sending the second and third text messages. The last communication between the two of them that night was Officer Wishon's response stating that he was not coming back to the club that night.

Defendant did not hear from Officer Wishon again until one week later when he texted defendant, "Are you working tonight?" By that time, defendant had deleted Officer Wishon's number from his phone, thinking that Officer Wishon had lost interest in him. Defendant's first response, therefore, was to ask who was texting him. When defendant found out it was Officer Wishon, he became excited and giddy. They texted back and forth a few times, but when Officer Wishon turned the conversation back to narcotics, defendant slowed down his responses. Referring to cocaine, Officer Wishon asked defendant if he had ever found

what Officer Wishon had asked for the night of 22 June 2011. Defendant told him he had not. Officer Wishon asked defendant if he could find him drugs, and defendant told him the same thing he had told him the first night -- that he could ask around.

Defendant told Officer Wishon to contact Eric, a customer of defendant's. Defendant began texting between both Officer Wishon and Eric, relaying the questions of Officer Wishon to Eric, and forwarding Eric's responses to Officer Wishon. Officer Wishon told defendant he was planning on going to Chasers the following night. Defendant forwarded Officer Wishon a text from Eric stating that the drug dealer was supposed to be at Chasers that night as well.

On the night of 30 June 2011, defendant was excited to see Officer Wishon at Chasers and went over to talk to him after he had finished a set. It was a busy Friday night, so defendant was unable to talk as much as he had been able to talk on the first night. Instead, the conversations were centered on Officer Wishon's questions about the dealer and whether he was there or not -- Officer Wishon would go to the bar and tip defendant and ask defendant when the drug dealer would arrive. He tipped defendant $10.00.

Eric was at the bar and signaled to defendant when the drug dealer, Paul Peterson, had arrived. Defendant recognized the drug dealer as "Uncle Paul," a man who frequented the bar, but he did not know him personally. Defendant told Officer Wishon that the drug dealer was at the club, and Officer Wishon asked defendant to get the cocaine for him. Defendant took the money from Officer Wishon, followed Mr. Peterson to the bathroom, and returned with the cocaine. He put the drugs in his underwear and asked Officer Wishon to retrieve the drugs because he did not want to touch the drugs himself.

When asked why he got the drugs for Officer Wishon, defendant replied: "I was doing what I could to impress him. He seemed to like me. I liked him, so I tried to do that for him." He also explained, "I had a crush. Having someone continuously ask you for the same thing makes you feel persuaded to do it."

Defendant testified that in one of the texts from Officer Wishon, he was told he would be given $100.00 for setting everything up. However, defendant did not state that money was what motivated him to help Officer Wishon. Instead, defendant explained:

> I mean, I just I liked him. In my life and my organization at that profession I was doing, I didn't get a lot of chances to meet decent people to actually date or who could possibly be a possible date.

When I found someone who I was really, really interested in and I felt like they were interested in me, I took a chance basically.

I didn't per se want to do it with the narcotics or be involved in it. I felt like I was pushed more to get it or else the interest would have been lost on his part in me.

Defendant felt that Officer Wishon took advantage of both his emotions and his financial situation. He had told Officer Wishon that he lived with his mother and that he was working to support himself and his mother and pay for school. He had never gotten in trouble before and does not use or sell drugs.

At the close of all the evidence, the State again argued that it was not given notice of the nature and extent of defendant's defense of entrapment until trial and asked that it be given until the following morning to address the issue of entrapment. In response, defense counsel asserted that defendant filed his intent to use the entrapment defense on 2 February 2012, 240 days prior to trial.

The trial court then indicated that "[w]hat the Court is going to hear with regard to the entrapment defense is whether or not that defense should go to the jury." The court granted the State's request that it wait to hear the parties' arguments until the following morning. Specifically, the trial court stated, "In the morning at 9:30, [the court will hear the

parties] about whether the issue of entrapment goes to the jury, based on the evidence before the Court." Defense counsel responded: "So I may be clear what the State is asking and what the Court is deciding -- we are not revisiting the issue of the motion in limine. We are objecting. There is sufficient evidence to present the testimony to submit to a jury for its consideration."

The following morning, after hearing the parties' arguments regarding the sufficiency of the evidence presented on entrapment, the trial court concluded that there was not sufficient evidence to instruct the jury on the entrapment defense. Although the parties had not addressed the adequacy of the notice, the trial court also added:

> In addition, the Court having given further thought to the motion of State raises the issue of notice to the state [sic] of the intent to use the defense of entrapment, the Court finds that the defendant failed to comply with the statute; that the defendant did not give them specifics as to the basis of the defense.

> So in addition to the Court's rul[ing] finding that the defendant failed to present sufficient or competent evidence of entrapment, the defendant further failed to notify the State in accordance with the statute of its intent to raise the defense of entrapment. The Court will not submit the issue of entrapment to the jury.

The jury found defendant guilty of delivery of cocaine and not guilty of the other two offenses. The trial court sentenced defendant to a presumptive-range term of five to six months imprisonment. The court suspended defendant's sentence and placed defendant on supervised probation for 12 months. Defendant timely appealed to this Court.

## Discussion

Defendant first argues that the trial court erred in concluding that the evidence was insufficient to warrant submission of the defense of entrapment to the jury.

> "Entrapment is the inducement of a person to commit a criminal offense not contemplated by that person, for the mere purpose of instituting a criminal action against him. To establish the defense of entrapment, it must be shown that (1) law enforcement officers or their agents engaged in acts of persuasion, trickery or fraud to induce the defendant to commit a crime, and (2) the criminal design originated in the minds of those officials, rather than with the defendant. The defense is not available to a defendant who was predisposed to commit the crime charged absent the inducement of law enforcement officials. The defendant has the burden of proving entrapment to the satisfaction of the jury."

*State v. Thompson*, 141 N.C. App. 698, 706, 543 S.E.2d 160, 165 (2001) (quoting *State v. Davis*, 126 N.C. App. 415, 417-18, 485 S.E.2d 329, 331 (1997)).

"The fact that governmental officials merely afford opportunities or facilities for the commission of the offense is, standing alone, not enough to give rise to the defense of entrapment." *State v. Hageman*, 307 N.C. 1, 30, 296 S.E.2d 433, 449 (1982). Instead, the defendant must present evidence that the law enforcement officers or their agents engaged in "acts of persuasion, trickery, or fraud[.]" *State v. Martin*, 77 N.C. App. 61, 67, 334 S.E.2d 459, 462 (1985). "A defendant is entitled to a jury instruction on entrapment whenever the defense is supported by defendant's evidence, viewed in the light most favorable to the defendant." *State v. Jamerson*, 64 N.C. App. 301, 303, 307 S.E.2d 436, 437 (1983).

In *State v. Stanley*, 288 N.C. 19, 32-33, 215 S.E.2d 589, 597-98 (1975), our Supreme Court held that the evidence presented at trial established that the defendant was entrapped as a matter of law. There, the undisputed evidence showed that an undercover officer, based on false representations, befriended the teenage defendant and became a "big brother" figure to him. *Id.* at 32, 215 S.E.2d at 597. The officer repeatedly asked the defendant where he could find and buy drugs, persuaded the defendant to make more than one drug buy for him, and supplied the money for the purchases. *Id.* at 21-22, 215 S.E.2d at 591. On two occasions prior to his arrest for

possession of a controlled substance, the defendant purchased drugs that turned out to be counterfeit because the defendant did not know the difference. *Id.* at 22, 215 S.E.2d at 591. The Supreme Court held that this evidence demonstrated that the criminal design originated with the officer, and there was not any evidence indicating that the defendant was predisposed to engage in possession or distribution of drugs. *Id.* at 32-33, 215 S.E.2d at 597-98.

Even where the evidence does not establish entrapment as a matter of law, "[i]f defendant's evidence creates an issue of fact as to entrapment, then the jury must be instructed on the defense of entrapment." *State v. Branham*, 153 N.C. App. 91, 100, 569 S.E.2d 24, 29 (2002). In *Branham*, the defendant testified that two days before he was arrested, an informant, who was the older brother of a girl defendant knew, asked defendant if he "'could get him a kilo of Cocaine,'" and the defendant responded that he had no idea where to get it. *Id.*, 569 S.E.2d at 30. The next day, the informant repeatedly asked the defendant for LSD, and persisted until the defendant agreed to locate the LSD requested. *Id.* Although the defendant offered to drive the informant to the seller so that the informant could make the purchase himself, the defendant ultimately agreed to make the purchase after the informant

offered the defendant an additional $100.00. *Id.* at 100-01, 569 S.E.2d at 30.

This Court held that the trial court properly instructed the jury on the issue of entrapment since "there was evidence that [an informant] and the officers initiated the offense, but also evidence from which the jury could have inferred that defendant was predisposed to sell LSD." *Id.* at 100, 569 S.E.2d at 30. Specifically, "[d]efendant's testimony that [the informant] repeatedly pushed defendant to obtain drugs for him, that he attempted to get [the informant] to make the purchase himself, and that he had never before been involved in any drug sales of this quantity" was sufficient to raise an issue of fact as to inducement and lack of predisposition to commit the offenses, despite the State's evidence to the contrary. *Id.* at 101-02, 569 S.E.2d at 30.

In *Jamerson*, the defendant presented evidence that an undercover officer and an informant came to the defendant's apartment and asked the defendant to sell them some drugs, but the defendant said that he did not have any. 64 N.C. App. at 302, 307 S.E.2d at 436. When the officer and informant returned a few hours later and the defendant still did not have any drugs and had not made any attempt to locate any drugs, the officer repeatedly told the defendant that he desperately needed drugs

because he was an addict. *Id.*, 307 S.E.2d at 437. After the informant located a person who would sell drugs and offered the defendant $15.00 to make the purchase, the informant drove the defendant to the location and the defendant made the purchase with money provided by the officer. *Id.* This Court held that this evidence was sufficient to require submission of a jury instruction on entrapment. *Id.* at 303, 307 S.E.2d at 437.

We believe that the facts of this case are analogous to *Stanley*, *Branham*, and *Jamerson*. Defendant's evidence and Officer Wishon's own testimony tended to show that Officer Wishon falsely led defendant to believe that he was romantically interested in defendant by asking him personal questions about defendant's life, maintaining eye contact, flirting, joking with him throughout the evening, asking for defendant's phone number, saying that he was "into" defendant rather than another dancer, and giving defendant a hug goodbye the first night they met.

The undisputed evidence shows that Officer Wishon, who was investigating narcotics violations, initiated the conversation regarding drugs by asking defendant where he could get "straight," a street term for cocaine that defendant did not understand. After Officer Wishon clarified that he was referring to cocaine, defendant told Officer Wishon that he did not do drugs but that he would ask around. Although the State

presented evidence that defendant, later that evening, renewed the conversation about his obtaining cocaine for Officer Wishon in two text messages defendant sent, defendant admitted sending only a flirtatious text message that did not mention drugs and denied sending the other two text messages. For purposes of the entrapment issue, we must assume that defendant's testimony is true.

Consequently, viewing the evidence in the light most favorable to defendant, there was no further discussion of drugs after defendant said simply that he would ask around until, a week later, Officer Wishon texted defendant about whether he was working that night. In the meantime, defendant had deleted Officer Wishon's phone number from his phone, an act a jury could find was consistent with someone focused on a romantic interest rather than a potential drug client. The initial texts a week later were not about drugs, but Officer Wishon then again asked defendant about obtaining drugs for him. Defendant ultimately did not himself act as an intermediary with the drug dealer, but identified one of his clients who could assist Officer Wishon with connecting with the drug dealer -- evidence which suggests that defendant did not have a predisposition to engage in drug dealing.

In addition, defendant testified that he only agreed to help Officer Wishon obtain the drugs because he was romantically interested in Officer Wishon, and, after being continuously asked about the drugs, "felt like [he] was pushed more to get it or else the interest would have been lost on [Officer Wishon's] part in [defendant]." The record also contains no evidence that defendant had previously used drugs, engaged in drug dealing, or was aware of common street lingo for drugs -- indeed, the record contains no evidence of any other behavior on defendant's part that was suggestive of a predisposition to help supply someone with drugs.

In sum, viewed in a light most favorable to defendant, Officer Wishon's flirtatious behavior towards defendant combined with his persistent requests for cocaine persuaded defendant to obtain the cocaine for Officer Wishon. Further, defendant's evidence would permit the jury to find that the idea for the crime (delivery of cocaine) originated with and was pursued solely by Officer Wishon, with no indication that defendant had any predisposition to participate in drug transactions.

Thus, as in *Stanley*, *Branham*, and *Jamerson*, the undercover officer initiated the conversation about drugs, persisted in seeking drugs, and provided defendant with the money for the exchange. Moreover, Officer Wishon's acts of inducement, like

those of the undercover officer in *Stanley*, involved emotional manipulation including creating a false relationship and then taking advantage of the defendant's desire to maintain that relationship. Finally, as in *Stanley*, there was no evidence of predisposition.

The State, nevertheless, argues that Officer Wishon merely afforded defendant the opportunity to commit the offense, arguing that the facts of this case are analogous to *Thompson*, *Martin*, *State v. Rowe*, 33 N.C. App. 611, 235 S.E.2d 873 (1977), *State v. Booker*, 33 N.C. App. 223, 234 S.E.2d 417 (1977), and *State v. Stanback*, 19 N.C. App. 375, 198 S.E.2d 759 (1973), decisions holding that the evidence was insufficient to show that the defendant was entrapped. We disagree.

In each of the cases cited by the State, the evidence established that the undercover agent had reason to believe the defendant was a drug dealer, or the defendant was otherwise specifically targeted by the undercover agent because the agent had reason to believe the defendant could obtain drugs. *See* *Martin*, 77 N.C. App. at 63, 334 S.E.2d at 460 (evidence was presented that defendant told undercover agent that "he had been dealing drugs for sixteen years and had a reputation in the community as a 'fair dealer who gave a good product at a fair price'"); *Thompson*, 141 N.C. App. at 699-700, 543 S.E.2d at 162

(sheriff's office received information from informant that defendant was selling drugs from his apartment and defendant was a heroin addict with extensive criminal history); *Booker*, 33 N.C. App. at 223, 234 S.E.2d at 417 (undercover officer went to defendant's house and asked to buy drugs, and defendant stated that he knew where he could get some marijuana and was able to retrieve drugs in 20 minutes); *Rowe*, 33 N.C. App. at 614, 235 S.E.2d at 875 (evidence established that undercover agent "worked herself into the drug traffic society and purchased drugs from the defendant"); *Stanback*, 19 N.C. App. at 376, 198 S.E.2d at 760 (undercover agent went to defendant's apartment to purchase drugs that defendant had promised to sell to agent previous day, and defendant told agent after transaction that "'[a]nytime you need anything, an ounce or a lid or a pound, I can get it for you'").

While the State argues that this case is similar to the decisions upon which it relies because defendant did not hesitate before telling Officer Wishon that he would ask around about drugs and did so in a short period of time, in the cases the State cites, any evidence tending to show that the defendant needed little urging before agreeing to the undercover agent's request was consistent with the totality of the evidence suggesting that the defendant was, in fact, a drug dealer.

When, in this case, the evidence is viewed in the light most favorable to defendant, there is no suggestion that defendant was a drug dealer, had any criminal history, or was in any way predisposed to commit the offense of delivery of cocaine independent of government influence.

Given the lack of evidence regarding defendant's criminal predisposition, any evidence that defendant required little urging before agreeing to ask around for drugs could be attributed by a jury to defendant's romantic interest in Officer Wishon and a desire to impress him. Thus, the evidence that the State points to as showing that defendant was predisposed to commit the crime is consistent with defendant's theory of the entrapment defense and merely creates an issue of fact for the jury to decide. We therefore hold that defendant presented sufficient evidence of the essential elements of entrapment, and the trial court erred in refusing to instruct the jury based on a lack of evidence.

The question remains whether the trial court's denial of defendant's request for an entrapment instruction may be upheld as a sanction for defendant's failure to provide adequate notice of his defense. N.C. Gen. Stat. § 15A-905(c)(1)(b) specifies that a defendant must provide the State with notice of its intent to offer at trial the defense of entrapment and that the

notice must "contain specific information as to the nature and extent of the defense." The trial court, in this case, found generally that defendant violated N.C. Gen. Stat. § 15A-905(c)(1)(b) because "defendant did not give [the State] specifics as to the basis of the defense." The trial court then used this violation as an additional basis for its refusal to submit the issue of entrapment to the jury.

If a trial court determines that a defendant has violated N.C. Gen. Stat. § 15A-905(c)(1)(b), it may impose any of the following sanctions on the defendant:

> (1) Order the party to permit the discovery or inspection, or
>
> (2) Grant a continuance or recess, or
>
> (3) Prohibit the party from introducing evidence not disclosed, or
>
> (3a) Declare a mistrial, or
>
> (3b) Dismiss the charge, with or without prejudice, or
>
> (4) Enter other appropriate orders.

N.C. Gen. Stat. § 15A-910(a) (2013).

However, "[p]rior to finding any sanctions appropriate, the court shall consider both the materiality of the subject matter and the totality of the circumstances surrounding an alleged failure to comply with this Article or an order issued pursuant to this Article." N.C. Gen. Stat. § 15A-910(b). "If the court

imposes any sanction, it must make specific findings justifying the imposed sanction." N.C. Gen. Stat. § 15A-910(d).

"Whether a party has complied with discovery and what sanctions, if any, should be imposed are questions addressed to the sound discretion of the trial court." *State v. Tucker*, 329 N.C. 709, 716, 407 S.E.2d 805, 810 (1991). "'Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *State v. Elliot*, 360 N.C. 400, 419, 628 S.E.2d 735, 748 (2006) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).

As explained by our Supreme Court, "the rules of discovery contained in the Criminal Procedure Act were enacted by the General Assembly to ensure, insofar as possible, that defendants receive a fair trial and not be taken by surprise. They were not enacted to serve as mandatory rules of exclusion for trivial defects in the State's mode of compliance." *State v. Thomas*, 291 N.C. 687, 692, 231 S.E.2d 585, 588 (1977). Despite the General Assembly's emphasis on protecting defendants from the State's noncompliance, "[s]uch legislative intent . . . does not give defendants *carte blanche* to violate discovery orders, but rather, defendants and defense counsel both must act in good faith, just as is required of their counterparts representing

the State." *State v. Gillespie*, 180 N.C. App. 514, 525, 638 S.E.2d 481, 489 (2006), *modified and affirmed*, 362 N.C. 150, 655 S.E.2d 355 (2008). Thus, the rules of discovery have been applied with equal force to both defendants and the State to ensure a fair trial and avoid unfair surprise for both parties. *See, e.g., State v. McMahon*, 67 N.C. App. 181, 183, 312 S.E.2d 526, 527 (1984) (applying common law notions of fairness and holding that discovery rule applicable to State is equally applicable to defendant).

In *State v. Cooper*, ___ N.C. App. ___, ___, 747 S.E.2d 398, 414 (2013), *appeal dismissed and disc. review denied*, ___ N.C. ___, 753 S.E.2d 783 (2014), this Court reversed the trial court's imposition of sanctions against a defendant when the sanction imposed "was disproportionate to the purposes this state's discovery rules were intended to serve." In *Cooper*, the trial court had excluded the testimony of the defendant's second expert witness as a sanction for the defendant's failure to disclose the witness to the State as required by N.C. Gen. Stat. § 15A-905 (2011). ___ N.C. App. at ___, 747 S.E.2d at 403. The defendant had only proffered the second expert witness after the State successfully moved at trial to exclude the testimony of defendant's first expert witness on the basis that the witness was not qualified to testify as an expert. *Id.* at ___, 747

S.E.2d at 413. Because the State had not indicated any intention to challenge the defendant's first expert witness prior to trial, the defendant did not anticipate needing a second expert, and, as a result, did not have the second expert on its witness list. *Id.* at ___, 747 S.E.2d at 413.

In addressing whether the trial court abused its discretion in sanctioning the defendant by excluding the testimony of the expert witness, the *Cooper* Court first recognized that the imposition of sanctions on a criminal defendant has constitutional implications because of a defendant's constitutional right under the Sixth Amendment to present a defense. *Id.* at ___, 747 S.E.2d at 414. The Court then pointed to the factors set out by the United States Supreme Court in *Taylor v. Illinois*, 484 U.S. 400, 98 L. Ed. 2d. 798, 108 S. Ct. 646 (1988), to be considered in determining the appropriate sanction, consistent with that constitutional right, when a defendant has failed to disclose a witness:

> "Although the *Taylor* Court declined to cast a mechanical standard to govern all possible cases, it established that, as a general matter, the trial judge (in deciding which sanction to impose) must weigh the defendant's right to compulsory process against the countervailing public interests: (1) the integrity of the adversary process, (2) the interest in the fair and efficient administration of justice, and (3) the potential prejudice to the truth-determining function of the trial process. The judge

should also factor into the mix the nature of the explanation given for the party's failure seasonably to abide by the discovery request, the willfulness *vel non* of the violation, the relative simplicity of compliance, and whether or not some unfair tactical advantage has been sought."

___ N.C. App. at ___, 747 S.E.2d at 415 (quoting *Chappee v. Vose*, 843 F.2d 25, 29 (1st Cir. 1988)).

Applying the *Taylor* factors to the facts in *Cooper*, the Court reasoned:

> Defendant, in failing to provide earlier notice to the State, was clearly not seeking any tactical advantage. The trial court made no finding of willful misconduct, and the record divulges none. Defendant only sought out another expert . . . after the State was successful in moving to limit [the first expert's] testimony in the middle of the trial. At that point, Defendant had no way to present vital expert testimony and comply with N.C.G.S. § 15A-905(c)(2).
>
> In light of the lack of willful misconduct on the part of Defendant, the rational reason presented for failing to inform the State before trial that Defendant would be calling [the second expert], the role of the State in having this situation arise after the trial had commenced, the fundamental nature of the rights involved, the importance to the defense of the testimony excluded, and the minimal prejudice to the State had the trial court imposed a lesser sanction -- such as continuance or recess, we hold that imposing the harsh sanction of excluding [the second expert] from testifying constituted an abuse of discretion.

*Id.* at ___, 747 S.E.2d at 415.

In *State v. Dorman*, ___ N.C. App. ___, 737 S.E.2d 452, *appeal dismissed and disc. review denied*, 366 N.C. 594, 743 S.E.2d 205 (2013), this Court addressed, in similar fashion, the appropriateness of the extreme sanction of dismissal when the State has committed a discovery violation, even though sanctioning the State has no constitutional implications. The Court held that "'[g]iven that dismissal of charges is an "extreme sanction" which should not be routinely imposed,'" such dismissals "'should also contain findings which detail the perceived prejudice to the defendant which justifies the extreme sanction imposed.'" *Id.* at ___, 737 S.E.2d at 470 (*quoting State v. Allen*, ___ N.C. App. ___, ___, 731 S.E.2d 510, 527-28, *disc. review denied*, 366 N.C. 415, 737 S.E.2d 377 (2012), *cert. denied*, ___ U.S. ___, 185 L. Ed. 2d 876, 133 S. Ct. 2009 (2013)). After noting that the defendant had possession of the evidence the State initially failed to disclose, the Court held that "[a]bsent a finding explaining the specific and continuing prejudice Defendant will suffer, the trial court's order dismissing the charge on this basis is in error." *Id.* at ___, 737 S.E.2d at 470.

We see no reason why the rules set out in *Cooper* and *Dorman* should not apply with equal force to a trial court's refusal to instruct the jury on an affirmative defense presented by the

defendant.  Such a sanction in this case has the same effect on the defendant as the "harsh sanction" in *Cooper* that interfered with the defendant's defense -- even though defendant was allowed to present entrapment evidence, the jury was not instructed in a way that permitted it to consider that evidence as a basis for acquitting defendant.  Given such a harsh sanction, the trial court was required, under *Dorman*, to justify the sanction with findings regarding the prejudice to the State resulting from defendant's discovery violation.

Requiring the trial court to consider the prejudice to the State resulting from the defendant's discovery violation before imposing the extreme sanction of precluding an affirmative defense is also consistent with this court's holding in *State v. McDonald*, 191 N.C. App. 782, 786-87, 663 S.E.2d 462, 465 (2008). In *McDonald*, the defendant failed to provide the State with notice of the defenses it intended to assert at trial as required by N.C. Gen. Stat. § 15A-905, despite the State having made several motions requesting notice of defenses.  *Id.* at 785, 663 S.E.2d at 464-65.  The trial court ultimately allowed the defendant to assert the defenses of duress and accident but precluded the defendant from asserting the defenses of voluntary intoxication and diminished capacity.  *Id.*, 663 S.E.2d at 465.

This Court noted that the State "had anticipated the accident defense" and that "unlike the diminished capacity and voluntary intoxication defenses, the defense of duress would not require substantial preparation on the part of the State, including the engagement of experts." *Id.* at 786, 663 S.E.2d at 465. Because the trial court "precluded only those defenses that would have prejudiced the State" and allowed defendant to proceed with other defenses -- either because the State could have anticipated the defense, or because the State could quickly and adequately prepare despite the late notice -- this Court held that the trial court's sanction was not an abuse of discretion. *Id.* at 787, 663 S.E.2d at 465.

In line with this Court's analysis in *Cooper*, *Dorman*, and *McDonald*, we hold that in considering the totality of the circumstances prior to imposing sanctions on a defendant, relevant factors for the trial court to consider include without limitation: (1) the defendant's explanation for the discovery violation including whether the discovery violation constituted willful misconduct on the part of the defendant or whether the defendant sought to gain a tactical advantage by committing the discovery violation, (2) the State's role, if any, in bringing about the violation, (3) the prejudice to the State resulting from the defendant's discovery violation, (4) the prejudice to

the defendant resulting from the sanction, including whether the sanction could interfere with any fundamental rights of the defendant, and (5) the possibility of imposing a less severe sanction on the defendant.

In this case, the trial court found that defendant violated N.C. Gen. Stat. § 15A-905(c)(1)(b) because "defendant did not give [the State] specifics as to the basis of the defense." Assuming, without deciding, that defendant's notice constituted a discovery violation, we must determine, in light of the factors listed above, whether the trial court abused its discretion in refusing to instruct the jury on the defense of entrapment.

We note first that the procedure by which the trial court concluded that defendant failed to comply with the notice requirements suggests that it was not the result of a reasoned decision. The trial court originally denied the State's pretrial motion for sanctions. At the end of the trial, the trial court indicated that it would hear oral argument regarding the submission of the entrapment defense to the jury, but specifically limited the party's arguments to the sufficiency of the evidence -- the court confirmed that it would not be revisiting the court's decision to deny the State's pretrial motion for sanctions. Nevertheless, after ruling that the

evidence presented by defendant was insufficient to support an instruction on the defense of entrapment, the trial court, *sua sponte*, without giving defendant any notice or an opportunity to be heard, decided to reverse its denial of the State's pretrial motion for sanctions and preclude the use of the entrapment defense as a sanction.

In doing so, the trial court made no findings "justifying the imposed sanction" as required by N.C. Gen. Stat. § 15A-910(d) and made no finding that the State had been prejudiced by the lack of specifics in defendant's notice. The court simply found that defendant had failed to fully comply with the notice statute. The procedure followed by the trial court, the failure to find prejudice, and the lack of findings are inconsistent with the court's ruling being a reasoned decision to further the purposes of the rules of discovery. Rather, the record suggests that the trial court imposed sanctions simply as an afterthought to bolster its decision not to instruct the jury on entrapment.

In addition, our review of the record reveals no basis for imposing the extreme sanction of precluding a defense. There is no indication that defendant, in failing to give more specifics in his notice, acted in bad faith or to gain an unfair advantage at trial. Rather, defendant filed a timely notice well in advance of trial, disclosing his intent to assert the defense of

entrapment and including the identity of the specific officer whom defendant contended induced him to commit the crime. The State made no showing that the omission of further details was in bad faith or a tactical move.

Indeed, the record indicates that any lack of preparation to meet the defense was contributed to by the State's failing to take timely action. Defendant filed his notice on 2 February 2012 -- more than eight months prior to trial. During that time, the State had general notice of defendant's intent to use the defense and specific notice that Officer Wishon's actions resulted in the alleged entrapment. Officer Wishon, the State's lead witness, was readily accessible to the State for questioning regarding his conduct in interacting with defendant. In the event that the State desired additional specifics regarding defendant's entrapment defense, the State could have requested more information from defendant or moved for an order requiring defendant to provide adequate discovery. Given defense counsel's apparent belief that he had complied with N.C. Gen. Stat. § 15A-905(c)(1)(b), the State's failure to request more information or to alert defendant that its notice was inadequate during the eight months prior to trial, similar to the State's failure in *Cooper* to notify the defendant prior to trial of its intention to challenge the defendant's primary

expert, deprived defendant of an opportunity to comply with the rules of discovery in a timely fashion and avoid being subject to sanctions.

Moreover, the refusal to instruct the jury concerning an affirmative defense is a harsh sanction that implicates defendant's fundamental right to present a defense at trial. In contrast, the prejudice to the State resulting from defendant's violation was minimal. During the pretrial motions hearing, defendant gave a detailed proffer of the evidence he intended to present to establish entrapment. The State did not call its first witness until the following day, and defendant did not testify until the second day of trial. Because the evidence on entrapment was testimonial in nature, was limited to the acts of Officer Wishon, and "would not require substantial preparation on the part of the State, including the engagement of experts[,]" *McDonald*, 191 at 786, 663 S.E.2d at 465, the additional days to prepare after receiving notice of the nature and extent of defendant's entrapment defense should have been sufficient to remedy any prejudice to the State. In any event, the State would not have been prejudiced had the trial court imposed a less severe sanction such as a continuance or a recess.

After considering the totality of the circumstances, we hold that the trial court's refusal to instruct the jury on the entrapment defense was not a proper sanction for any failure by defendant to provide sufficiently specific notice of his intent to assert the defense of entrapment. The trial court's ruling, therefore, constituted an abuse of discretion. *See Dorman*, ___ N.C. App. at ___, 737 S.E.2d at 470 (holding trial court's pretrial order suppressing certain witnesses' testimony from use in future proceedings based on State's initial failure to disclose various documented conversations was in error when defendant was in possession of the relevant information well before trial, and trial court failed to detail specific and continuing prejudice defendant suffered as a result of initial nondisclosure and failed to explain how suppression of witnesses' testimony remedied non-disclosure).

## Conclusion

We hold that defendant presented sufficient evidence to warrant submission of the entrapment defense to the jury. Further, the trial court abused its discretion when precluding the entrapment defense as a sanction for defendant's having served a notice of his intent to rely upon the entrapment defense that was not sufficiently specific. Defendant is, therefore, entitled to a new trial.

New trial.

Judges STEPHENS and ERVIN concur.