IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-500

No. COA20-200

Filed 21 September 2021

Rockingham County, Nos. 17 CRS 050556-559, 18 CRS 000076

STATE OF NORTH CAROLINA

v.

IVAN GERREN HOOPER

Appeal by defendant from judgment entered 7 March 2018 by Judge Stanley L. Allen in Rockingham County Superior Court. Heard in the Court of Appeals 9 March 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Jasmine C. McGhee, for the State.*

*Carella Legal Services, PLLC, by John F. Carella, for defendant-appellant.*

TYSON, Judge.

¶ 1 Ivan Gerren Hooper ("Defendant") appeals from a judgment entered upon a jury's verdicts finding him guilty of assault by strangulation, communicating threats, assault on a female, interfering with emergency communication, and attaining habitual felon status. We find no error.

## I. Background

¶ 2 On 5 March 2017, Reidsville Police Officer Scott Brown responded to a call

placed by Ashley Thomas concerning an alleged assault, which had occurred at a Quality Inn Hotel the previous evening. Officer Brown met Thomas at her residence located on Wolf Island Road. Thomas stated she had an altercation with Defendant, the father of her child. Evidence tended to show Thomas arrived with their son, Trent, at Defendant's hotel room at the Quality Inn on 4 March 2017. Following the altercation in the hotel room, Defendant had been shot. Thomas was visibly bruised and swollen across the bridge of her nose and eyes and displayed redness around her neck. Thomas also showed an open wound on her cheek, and scratches down her chest.

¶ 3        Defendant was indicted for assault by strangulation, possession of a firearm by felon, communicating threats, assault on a female, interfering with an emergency communication, and subsequently, with attaining the status of a habitual felon. Defendant failed to file a pre-trial notice to assert self-defense. *See* N.C. Gen. Stat. § 15A-905(c)(1) (2019).

¶ 4        Thomas testified to her version of the events that unfolded at Defendant's hotel room. Thomas testified when she arrived at Defendant's hotel room with their son for visitation, Defendant began questioning Thomas regarding her personal relationship status. Defendant became agitated, punched, kneed, and threatened Thomas' life. Thomas then kneed Defendant, which allowed Thomas to get up and retrieve her phone just before Defendant shattered it. Thomas turned to the TV

stand, picked up [Defendant's] gun, and discharged the gun towards the floor.

¶ 5        Defendant did not testify at trial. Reidsville Police Officer Jason Joyce, a witness for the State, testified about what Defendant had told him on 5 March 2017. Defendant told Officer Joyce he had advanced toward Thomas after he saw her with the firearm.

¶ 6        Defendant's mother, Felicia Donnell, testified for Defendant regarding a phone call she had with Thomas shortly after the events had occurred in the hotel room. Donnell testified she was told no physical altercation had occurred until after the first shot was fired. Further testimony by other defense witnesses showed Thomas had acquired a gun prior to her visit to Defendant's hotel room.

¶ 7        At the close of the State's case and again at the close of all evidence, Defendant moved to dismiss for insufficiency of the evidence. Defense counsel argued Thomas had "provoked this particular action" and that it was a "defense mechanism" and that "he had to try to protect himself." Both motions were denied. During the initial charge conference, the trial court presented and laid out the proposed jury instructions. Defendant did not request additional instructions or raise objections to the instructions the court intended to give. Counsel expressly agreed to the court's tendered instructions.

¶ 8        The following day, immediately before the jury instructions were to be delivered, Defendant requested, for the first time, the jury be instructed on self-

defense using the pattern jury instruction, entitled "Self-Defense-Assaults Not Involving Deadly Force." N.C.P.I. -- Crim. 308.40 (2017). The State objected.

¶ 9        The trial court denied Defendant's request, stating "there was no notice given of [an] affirmative defense." The court further pointed out there was no evidence of what Defendant thought or believed about the need to defend himself and "there [was] no other evidence that . . . anything was done in self-defense." After instructing the jury, the trial court again asked both the State and Defendant if there were any objections to the jury instructions. Both parties replied they had no objections to the instructions as given.

¶ 10       The jury found Defendant not guilty of possession of a firearm by a felon, but guilty of assault by strangulation, communicating threats, assault on a female, interfering with emergency communication, and having attained habitual felon status. Defendant's convictions were consolidated, and he was sentenced to an active prison term of 65 to 90 months.

## II.    Jurisdiction

¶ 11       Defendant failed to give timely notice of appeal. Defendant's petition for writ of certiorari was allowed by this Court 27 August 2019 to review the judgment entered 7 March 2018. This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 15A-1444(g) (2019) and N.C. R. App. P. 21(a)(1).

## III.    Issue

¶ 12     Defendant argues the trial court erred by denying his request for an instruction on self-defense.

## IV.     Self-Defense Instruction

¶ 13     Defendant failed to file the statutorily required notice of intention to offer a defense of self-defense at trial.  *See* N.C. Gen. Stat. § 15A-905(cv)(1) ("Give notice to the State of the intent to offer at trial a defense of . . .  self-defense").  Defendant asserts sufficient evidence was presented to justify the trial court instructing the jury on self-defense.

¶ 14     During the jury charge conference, the trial court stated it was going to give:

> the usual [instructions]: function of the jury, burden of proof, and reasonable doubt, credibility of witnesses, weight of the evidence, effect of the Defendant's decision not to testify.
> I had to pull it in from a civil volume, but it's 101.41, that's stipulations; 104.05, circumstantial evidence; 104.41, actual versus constructive possession; 104.50, be the photographs and the other things as illustrative evidence; 105.20, impeachment or corroboration by a prior statement; 105.35, impeachment of a witness, other than the Defendant by proof of a crime; 120.10, definition of intent.
> And then, the substantive offenses, 208.61, assault inflicting physical injury by strangulation; 254A.11, possession of a firearm, it wouldn't be a weapon of mass destruction by a felon; 208.70, assault on a female by a male person; 235.18, communicating threats; and 222.32, interfering with emergency communications; and then the final mandate.

The trial court then asked of both the State and Defendant's trial counsel: "Are there

any requests for additional instructions or any objections to the instructions the Court is intending to give[?]" Defendant's counsel responded, "Your Honor, I believe that the information that's been articulate (sic) is accurate."

¶ 15 During the jury charge conference, Defendant's counsel never made additional requests, nor voiced any objection regarding the jury instructions proposed after he was specifically asked by the trial court. Defendant was provided the opportunity to object or correct these instructions and expressly agreed to the instructions to be given.

¶ 16 The day after the jury charge conference, just before jury deliberations, Defendant's counsel mentioned self-defense for the first time and made the request for a self-defense instruction. The trial court recalled Defendant's express agreement to the proffered instructions from the day prior, stating: "Well, you said yesterday you were satisfied with the instructions as the Court had outlined is going (sic) to give."

¶ 17 After delivering the instructions to the jury, the trial court held the following colloquy:

> THE COURT: Now outside the presence of the jury, are there any requests for additional instructions or for corrections or any objections to the instructions given to the jury by– from the State?
>
> [THE STATE]: No, Your Honor.
>
> THE COURT: Or from the Defendant?

[DEFENDANT'S COUNSEL]: No, Your Honor.

¶ 18    Defendant's failure to object during the charge conference or after the instructions were given to the jury, along with his express agreement during the charge conference and after the instructions were given to the jury, constitutes invited error. His invited error waives any right to appellate review concerning the invited error, "*including plain error review.*" *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001) (emphasis supplied).

¶ 19    Our Supreme Court in *State v. White* examined a defendant's counsel's involvement in jury instructions in a death penalty case. *State v. White*, 349 N.C. 535, 508 S.E.2d 253 (1998). The Court held:

> Counsel . . .did not object when given the opportunity either at the charge conference or after the charge had been given. In fact, defense counsel affirmatively approved the instructions during the charge conference. Where a defendant tells the trial court that he has no objection to an instruction, he will not be heard to complain on appeal.

*Id.* at 570, 508 S.E.2d at 275 (citing *State v. Wilkinson*, 344 N.C. 198, 213, 474 S.E.2d 375, 396 (1996)). The tardiness of Defendant's purported request followed by his counsel's express agreement following the jury instructions as given waives appellate review. Defendant's argument is overruled.

## V.    Prejudice

¶ 20    North Carolina's statutes provide: "A defendant is not prejudiced by the

granting of relief which he has sought or by error resulting from his own conduct."
N.C. Gen. Stat. § 15A-1443(c) (2019). Even if we agreed the trial court erred in
denying Defendant's requests regarding the self-defense, Defendant cannot carry his
burden to show the court's refusal of his requested instruction "had a probable impact
on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506,
517, 723 S.E.2d 326, 333 (2012) (citation omitted).

¶ 21        In *State v. Chavez,* our Supreme Court held:

> Where there is highly conflicting evidence in a case, an
> error in the jury instructions may tilt the scales and cause
> the jury to convict a defendant. In situations where the
> instructional error had a probable impact on the jury's
> finding that the defendant was guilty, a defendant can
> show plain error. In contrast, where the evidence against a
> defendant is overwhelming and uncontroverted[, a]
> defendant cannot show that, absent the error, the jury
> probably would have returned a different verdict.

*State v. Chavez*, __ N.C. __, __, 2021-NCSC-86, ¶13, 2021 WL 355039 at *4 (2021)
(citations and quotation marks omitted). Defendant cannot show prejudice because
the evidence against him was both "overwhelming and uncontroverted." *Id.*

## VI.  Conclusion

¶ 22        Defendant's trial counsel's active participation in the formulation and express
agreement on the instructions forecloses appellate review on this issue, "including
plain error review." *Barber*, 147 N.C. App. at 74, 554 S.E.2d at 416. Defendant's
counsel's express agreement to the instructions before and after they were given

constitutes invited error and waives any right to appellate review concerning the invited error. *White*, 349 N.C. at 570, 508 S.E.2d at 275.

¶ 23 Presuming Defendant's mother's hearsay testimony of his phone call could be considered unasserted "self-defense," in the face of "overwhelming and uncontroverted [evidence of guilt, a] defendant cannot show that, absent the error, the jury probably would have returned a different verdict." *Chavez*, __ N.C. at __, 2021-NCSC-86, ¶13, 2021 WL 355039 at *4.

¶ 24 Defendant received a fair trial, free from prejudicial errors he preserved or argued. We find no error in the jury's verdicts or in the judgment entered thereon. *It is so ordered.*

NO ERROR.

Judge GORE concurs.

Judge MURPHY dissents with separate opinion.

MURPHY, Judge, dissenting.

The Majority incorrectly concludes "Defendant's failure to object during the charge conference or after the instructions were given to the jury, along with his express agreement during the charge conference and after the instructions were given to the jury, constitutes invited error." *Supra* at ¶ 18. In light of errors in the analysis to reach this conclusion, I respectfully dissent.

Additionally, while the Majority does not reach the merits of Defendant's arguments, this dissent also encompasses the merits in the following sections. *See* N.C. R. App. P. 16(b) (2021) ("When the sole ground of the appeal of right is the existence of a dissent in the Court of Appeals, review by the Supreme Court is limited to a consideration of those issues that are (1) specifically set out in the dissenting opinion as the basis for that dissent[.]").

**BACKGROUND**

On 10 April 2017, Defendant, Ivan Gerren Hooper, was indicted for assault by strangulation, possession of firearm by felon**,** communicating threats, assault on a female, and interfering with an emergency communication. On 5 February 2018, Defendant was indicted for attaining the status of a habitual felon. Defendant's trial began on 5 March 2018.

At trial, the evidence showed that on 4 March 2017, the mother of Defendant's child, Ashley Thomas, arrived with their son, Trent, at Defendant's hotel room at a Quality Inn. Subsequent events in the hotel room are disputed. However, following

the disputed events in the hotel room, Defendant had been shot, and Thomas had "apparent bruising and swelling across the bridge of her nose and eyes[,]" "bruising and red marks around both sides of her neck" and open wound scratches down her cheek and chest.

¶ 29     Thomas testified for the State. Thomas's testimony at trial indicated that the following events occurred:

> [THOMAS:] When I first get into the hotel room, I sit my son down, and I sit down in the chair near the door. And [Defendant] says, "No, let me sit right here," and I said–
>
> . . . .
>
> [THE STATE:] Okay. And– so what does [Defendant] say to you at that point?
>
> [THOMAS:] He asked me to let him sit right there at the chair by the door, and I said, "Why does it matter where I sit? I'm fine sitting right here." "No, let me sit right here." So I don't move and he pulls up a chair directly in front of me in my face, and then he begins to question me about a guy that he assumed I had a relationship with.
>
> He saw his cousin at the store before he met me at the hotel room and his cousin was telling him, "Yeah, she been dealing with him," blah, blah, blah, all this stuff like that. So then, he begins to question me about were we dealing and all this stuff, and I told him no. And so–
>
> . . . .
>
> [THOMAS:] I said, "Is this really why you called me here?" And then, he said, "Well honestly, I don't care. I don't want you anyway, so you can really dismiss yourself." So I said, "Okay," and as I proceed to stand up and grab for my child,

that's when he gets in my face, and pushes me, and starts punching me.

[THE STATE:] And where does he punch you?

[THOMAS:] He punches me in my face, in my stomach.

[THE STATE:] And what does he punch you with?

[THOMAS:] A closed fist.

[THE STATE:] Okay.  And after you're standing there and he's punching you in the face with his closed fist, what transpires after that?

[THOMAS:] Then he takes me and slings me on the bed, climbs on top of me, and starts continuously hitting me in my face as I'm screaming, "Please don't do this in front of Trent," like–

. . . .

[THOMAS:] He's punching me in the face, I'm trying to shield my face.  I put my knee up to kind of try to push him off, and I'm screaming "Help," you know, and "Oh, my God," and everything like that and he just continues.

. . . .

[THE STATE:] Does [Defendant] say anything to you at this point?

[THOMAS:] He says, "Nobody is going to be able to save you, but Trent, and even he is not going to be able to save you today.  I'm going to kill you, [b----]."

. . . .

[THE STATE:] And what else does, if anything, does he do to you?

[THOMAS:] Then somehow we get up off the bed. I think when I nudged him, we stood up, and that's when he threw me on the floor, climbed on top of me, and started choking me.

[THE STATE:] And what is going on with you while he's choking you?

[THOMAS:] I feel myself about to lose consciousness like my vision's blurring, I can't breathe, I can't even scream.

[THE STATE:] And what is he choking you with?

[THOMAS:] His hands.

[THE STATE:] What happens after that?

[THOMAS:] After that, I think that's when I kneed him in his genital area and he finally got up. And I go directly over to the mirror and look at my face, and I'm like, "Oh, my God. I can't believe you actually did this." And then he tells me, "Get back up on the bed and you gonna call this [n----]."

And so, I grabbed for my phone and I looked and see my uncle's calling me as all of this is going on, and so, I try to call him back. And then, he smacks my phone out of my hand up against the wall and it shatters.

. . . .

[THOMAS:] After he throws my phone, then that's when my attention is directed to the TV stand, and I see a firearm sitting there. And the first thing that goes through my head is "you've got to get this before he gets his hands on it." So I picked the gun up, and by this time I'm standing facing the door. So my back is to the mirror, and the bathroom, and all that.

And he grabs my son and puts my son in front of him like, "Shoot me. You not gonna shoot me." So then, I say,

"Trent, come here, baby," and Trent runs over to me. And I say, "[Defendant], if you do not let me go, you leave me no choice but to shoot this gun."

And so, he act like he's going to lunge at me, so I pull the trigger, and the gun is pointed down towards the floor. And he said, "I've been shot, *(inaudible)* I've been shot." And I didn't know that he'd been shot because I didn't aim towards his head, his arms, nothing. I pointed directly to the floor.

So then, he jumps over and he grabs my hand because my hand is on the gun, and he's like, "Let the gun go. Let the gun go." I said, "No, I'm not going to let the gun go, so you can do what you already planned to do." And he says, "Well, we'll let it go at the same time." And I said, "No, I'm not letting it go." And he says, "Well, if I let it go, can I leave with you?"

I said, "Sure," anything so he would get off of me, so I could have my chance to get out. So when he lets go, I grab my son, I still have the gun in my hand, and I run out and get in my car.

¶ 30    Defendant did not testify at trial. However, Officer Jason Joyce, a witness for the State, testified about what Defendant told him on 5 March 2017:

> [OFFICER JOYCE:] . . . . Myself and my lieutenant, Lieutenant Osborne, we spoke to [Defendant] in Room 101. He advised that on [4 March 2017] at about 6:00 PM, his– the mother of his child, Ashley Thomas, and their child, Trenton Thomas, came to the Quality Inn, I'm sorry, came to the Quality Inn, Room 101 at the Quality Inn.
>
> [THE STATE:] And what did he tell you about that incident?
>
> [OFFICER JOYCE:] [Defendant] stated the conversation turned into an argument with [] Thomas, and [] Thomas

pulled a gun out on him and shot him in the leg.

[THE STATE:] Did he say anything else?

[OFFICER JOYCE:] Stated that when he saw the firearm, he advanced towards her and tried to get the firearm from her, and that they struggled with each other. Said it all happened in front of their son, Trenton, and that once he was shot, both of them left the scene.

[THE STATE:] And did he tell you anything about what this argument was about or anything?

[OFFICER JOYCE:] No, he did not.

[THE STATE:] Did he tell you anything else that led up to him being shot?

[OFFICER JOYCE:] He stated that he was staying at the hotel to get away from people because of a death in the family. I asked him why he waited so long to report the shooting, and he stated he went to a friend of his house *(sic),* who was in the medical field, and they treated him. And he passed out because he had never been shot before.

¶ 31    Defendant's mother, Felicia Donnell, testified for Defendant. According to Donnell, Thomas called her after 4 p.m. on 4 March 2017 and recounted what happened in the hotel room:

[DONNELL:] When [Thomas] called me, I could tell that she was very upset, so I asked her what was going on. And she just told me, "I shot him. I shot your son."

[DEFENSE COUNSEL:] And–

[DONNELL:] Then I asked her to please tell me what went on, what took place, you know, for her to shoot him. So she went on to explain briefly that she went to where he was

staying at that time. And honestly until this time, I didn't know it was a Days Inn, or a friend's home, or where he was that particular day.

But anyway, she let me know that she was fearing for her life and that she had a gun, and she and [Defendant] were standing in front of one another. And at that point, she said she had it pointed at him, and she asked him, "[Defendant], are you going to kill me?" And [Defendant] said– *(inaudible)* [Defendant] said to me *(sic)*, "Give me the gun." And she said, "[Defendant], are you going to kill me?" He said, "[Thomas], give me the gun."

And then, a shot was fired, a scuffle happened, and then a fire, you know, a bullet happened again, and he looked down at his leg, is what she told me. I said, "You shot him in his leg?" And she said, "Yes." And she said that he looked down at his leg because they could see some blood and he said, "You shot me. You shot me."

So after that, I'm honest, I don't know what went down after that, but my main question was to [Thomas], "You left [your son] at your mom's home, right, when you went to see [Defendant]?" And she said, "No, he was there." And I said, "He could have been hurt," because I had told her on [3 March] while I was at the airport, "do not go over to see [Defendant] under any circumstances. Just stay away from him." So I was shocked to get that phone call that she– when she called me on Saturday[.]

. . . .

[DEFENSE COUNSEL:] And– so, [] Donnell, from what was conveyed to you, was it the fact that there was a scuffle after the weapon was fired?

[DONNELL:] A shot was fired, and then a scuffle happened. She told me exactly what happened. I said, "What did he do to you?" And she let me know that he did strangle her and that he punched her, but then a second

fire happened at some point and that's when, I think, both of– and I'm saying "think," but she told me that they were standing because both of them looked down at his leg. She didn't tell me which leg it was and they saw the blood–

. . . .

[DEFENSE COUNSEL:] Okay. And so, you said based on that component is that there was no physical altercation until after the first shot was fired?

[DONNELL:] After a shot was fired.

. . . .

[THE STATE:] And [] Thomas told you that she was strangled?

[DONNELL:] Uh-huh, after she fired the first shot, they got into that altercation.

¶ 32    At the close of the State's evidence, and again at the close of all evidence, Defendant made motions to dismiss for insufficiency of the evidence, arguing the evidence showed Defendant was acting to defend himself. Both motions were denied.

¶ 33    During the initial charge conference, Defendant indicated he was satisfied with the jury instructions. The following day, immediately before the jury instructions were delivered, Defendant requested, for the first time, the jury be instructed on self-defense using a pattern jury instruction entitled "Self-Defense—Assaults Not Involving Deadly Force." N.C.P.I.—Crim. 308.40 (2017). The State objected, noting "there was no notice provided that he intended to seek . . . any sort of defense, which he's required to do." The trial court denied Defendant's request, stating "there was

no notice given of [an] affirmative defense," and "there [was] no other evidence that . . . anything was done in self-defense."

The jury found Defendant not guilty of possession of a firearm by a felon and guilty of assault by strangulation, communicating threats, assault on a female, and interfering with an emergency communication. The jury also found Defendant guilty of having attained habitual felon status. A judgment was entered on 7 March 2018, sentencing Defendant to an active sentence of 65 to 90 months. Defendant did not give an oral notice of appeal in open court. However, on 30 August 2019, we allowed his *Petition for Writ of Certiorari* for the purpose of reviewing the judgment entered on 7 March 2018.

## ANALYSIS

### A. Preservation

Our Rules of Appellate Procedure provide as a general rule that "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the [trial] court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1) (2021). Regarding the preservation of jury instructions, the rules state:

> A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury

retires to consider its verdict, stating distinctly that to which objection is made and the grounds of the objection; provided that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.

N.C. R. App. P. 10(a)(2) (2021). "For the purposes of Rule 10(a)(2), a request for instructions constitutes an objection." *State v. Rowe*, 231 N.C. App. 462, 469, 752 S.E.2d 223, 227 (2013).

¶ 36    Here, the following colloquy occurred following the charge conference and before the jury was charged:

> THE COURT: All right, Sheriff, bring the jury in, please.
>
> [DEFENSE COUNSEL]: Your Honor, may I have just one moment?
>
> THE COURT: Yes.
>
> . . . .
>
> [DEFENSE COUNSEL]: Your Honor, I think it's reasonable based on information that has been presented that the– that self-defense component in this particular jury instruction would be appropriate, as well, [as] the 308.40 to be elicited here in this particular matter.
>
> Also secondly with that, Your Honor, I do have a case to hand up. I think that would be reflective of that, as well, based on the evidence that has been presented at this time.
>
> THE COURT: Okay. Well, you said yesterday you were satisfied with the instructions as the [c]ourt had outlined [it] is going to give.
>
> [DEFENSE COUNSEL]: And Your Honor, (*inaudible*) back

where we started in that component, so I wanted to make sure that (*inaudible*) would be appropriate, Your Honor.

THE COURT: And you want to be heard further?

[DEFENSE COUNSEL]: Yes, Your Honor.  Simply as we look at this particular matter, the State v. Jennings, this is 276 NC 157.  This particular matter, as it reflects to a slightly more serious– it's a murder allegation, but still when it reflects what takes place with a self-defense proposition, that should be provided to the jurors.  The piece here, I think, that falls in line with this particular matter is that obviously whatever has been charged, whatever was done, the fact still remains that this particular matter that's in front of the [trial court] today, it is most appropriate that this particular test here for self-defense should be appropriated– is appropriate and should be provided to the jurors.

With that, the actions that were done, the timeliness of the actions, all of those components are supported and would be prudent to make sure that the jurors are aware of this particular action that will be most beneficial, I think, in this matter.

. . . .

THE COURT: Well, I have to agree with the State.  The notice– there was no notice given of affirmative defense, and because that– and because we don't know what was in [] Defendant's mind because he exercised his constitutional right not to testify, we don't know what he was thinking or what he believed.  And there's been no other evidence that this was a– anything was done in self-defense.  The request for a self-defense instruction is denied.

Bring the jury in, please, Sheriff.

"As Defendant specifically requested the trial court to include a jury

instruction on [self-defense] and argued that point before the [trial] court, . . . he properly preserved this issue for appellate review." *Id.* at 469-70, 752 S.E.2d at 228.

¶ 38          The Majority relies on *State v. White,* 349 N.C. 535, 508 S.E.2d 253 (1998), *cert. denied,* 527 U.S. 1026, 144 L. Ed. 2d 779 (1999), to conclude "[t]he tardiness of Defendant's purported request followed by his counsel's express agreement following the jury instructions as given waives appellate review." *Supra* at ¶ 19. In *White*, the defense counsel requested that the trial court give peremptory instructions to the jury regarding nonstatutory mitigating circumstances. *White*, 349 N.C. at 568, 508 S.E.2d at 274. However, the defense counsel cited the pattern instruction for the peremptory instruction only for statutory mitigating circumstances, not for nonstatutory mitigating circumstances. *Id.* at 569, 508 S.E.2d at 274. When the trial court clarified the language it would use in the jury instruction, the defense counsel agreed. *Id.* Our Supreme Court observed:

> [The] [d]efense counsel thus agreed with this proposed language, made no objection to it, and neither suggested nor provided any other language either orally or in writing. Thereafter, the trial court instructed the jury exactly as it had indicated. [The] [d]efense counsel did not object at this point either, though given the opportunity.
>
> . . . .
>
> [The] defense counsel did not submit any proposed instructions in writing. Counsel also did not object when given the opportunity either at the charge conference or after the charge had been given. In fact, [the] defense

> counsel affirmatively approved the instructions during the
> charge conference. Where a defendant tells the trial court
> that he has no objection to an instruction, he will not be
> heard to complain on appeal.

*Id*. at 569-70, 508 S.E.2d at 274-75.

*White* is distinguishable from the facts of the present case because here, while Defendant did not say the words "I object" after the charge had been given, his "request for instructions constitutes an objection." *Rowe*, 231 N.C. App. at 469, 752 S.E.2d at 227. Further, Defendant's request for a self-defense jury instruction was denied, whereas in *White*, the trial court instructed the jury based on the instruction the defense counsel requested and the proposed language they agreed to.[1] *White,* 349

---

[1] Although the defendant in *White* also requested an instruction, the request for an instruction there could not constitute an objection. Where a request for instructions is granted and the defendant approves the language used in the instruction, like in *White*, a request for instructions cannot constitute an objection, as there is no longer anything for a defendant to object to. *See State v. Roache*, 358 N.C. 243, 296, 595 S.E.2d 381, 415 (2004) (citations omitted) ("The trial court sustained [the] defendant's objections to the questions specifically addressed by [the] defendant in his brief to this Court. This Court will not review the propriety of questions for which the trial court sustained a defendant's objection absent a further request being denied by the [trial] court. No prejudice exists, for when the trial court sustains an objection to a question the jury is put on notice that it is not to consider that question. Accordingly, any error alleged by [the] defendant to result from these questions is not properly before the Court, and regardless would not have resulted in prejudice."). In order for a request for an instruction to constitute an objection in this context, there would need to be a subsequent request for the instruction or a formal objection to the instructions. *See id.*; *but see State v. Ross*, 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988) ("[A] request for an instruction at the charge conference is sufficient compliance with [Rule 10] to warrant our full review on appeal where the requested instruction is subsequently promised but not given, notwithstanding any failure to bring the error to the trial judge's attention at the end of the instructions.").

N.C. at 568-70, 508 S.E.2d at 274-75.  Under our precedent in *Rowe*, Defendant did not waive appellate review.  "The fact that [Defense] [C]ounsel did not say the words 'I object' is not reason to deny appellate review . . . ."  *Id.* at 470, 752 S.E.2d at 228.

**B. Merits of Defendant's Argument**

¶ 40        Defendant argues the trial court erred in denying his request for an instruction on self-defense because there is "conflicting evidence regarding what happened at the Quality Inn, [and] when viewed in the light most favorable to [Defendant], [the evidence] supported an instruction on self-defense."  The State argues the trial court did not err in denying Defendant an instruction on self-defense because (1) Defendant "did not present competent evidence of self-defense" and (2) "Defendant did not provide required notice."  Defendant also argues that, to the extent the trial court's denial of his requested self-defense instruction was a sanction for failure to comply with the discovery statutes, "the trial court did not make the 'specific findings' that would be required for it to bar a jury instruction as a discovery sanction."

¶ 41        It would only have been proper for the trial court to refuse the self-defense instruction here if there was not sufficient evidence, when viewed in the light most favorable to Defendant, to support the instruction, and/or if the trial court used the refusal of the instruction as a sanction for Defendant's discovery violation.

**1. Sufficient Evidence of Self-Defense**

¶ 42        Defendant argues "[t]he evidence that [] Thomas possessed a gun and initiated

the struggle by aiming the gun at [Defendant] was sufficient to entitle [him] to the requested self-defense instruction, and there was a reasonable possibility the outcome would have been different had the jury been fully instructed." We review a trial court's decision regarding jury instructions de novo. *State v. Osorio,* 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).

¶ 43        "[W]here competent evidence of self-defense is presented at trial, the defendant is entitled to an instruction on this defense, as it is a substantial and essential feature of the case[.]" *State v. Morgan*, 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986) (emphasis omitted). "In determining whether there was any evidence of self-defense presented, the evidence must be interpreted in the light most favorable to [the] defendant." *State v. Webster*, 324 N.C. 385, 391, 378 S.E.2d 748, 752 (1989). "Where there is evidence that [the] defendant acted in self-defense, the [trial] court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in [the] defendant's evidence." *State v. Dooley*, 285 N.C. 158, 163, 203 S.E.2d 815, 818 (1974); *see State v. Moore*, 363 N.C. 793, 796, 688 S.E.2d 447, 449 (2010) ("[I]f the defendant's evidence, taken as true, is sufficient to support an instruction for self-defense, it must be given even though the State's evidence is contradictory.").

¶ 44        "[A]n error in jury instructions is prejudicial and requires a new trial only if there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."

*State v. Locklear*, 259 N.C. App. 374, 377, 816 S.E.2d 197, 201 (2018) (marks omitted); *see also* N.C.G.S. § 15A-1443(a) (2019). "The burden of showing such prejudice . . . is upon the defendant." N.C.G.S. § 15A-1443(a) (2019).

¶ 45        N.C.G.S. § 14-51.3 provides a defendant who uses non-deadly force to defend himself will be immune from criminal liability:

> (a) A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. . . .
>
> (b) A person who uses force as permitted by this section is justified in using such force and is immune from civil or criminal liability for the use of such force . . . .

N.C.G.S. § 14-51.3 (2019).

¶ 46        Here, the evidence presented at trial, when interpreted in the light most favorable to Defendant, is sufficient to entitle him to a jury instruction on self-defense. Specifically, Donnell testified Thomas told her the timeline of events was that Thomas first fired the gun, then Defendant became physical with Thomas, then Thomas fired another shot:

> [DEFENSE COUNSEL:] Okay. And so, you said based on that component is that there was no physical altercation until after the first shot was fired?
>
> [DONNELL:] After a shot was fired.
>
> . . . .

> [THE STATE:] And [] Thomas told you that she was strangled?
>
> [DONNELL:] Uh-huh, after she fired the first shot, they got into that altercation.

Officer Joyce's testimony corroborates Donnell's testimony:

> [OFFICER JOYCE:] [Defendant] stated the conversation turned into an argument with [] Thomas, and [] Thomas pulled a gun out on him and shot him in the leg.
>
> [THE STATE:] Did he say anything else?
>
> [OFFICER JOYCE:] Stated that when he saw the firearm, he advanced towards her and tried to get the firearm from her, and that they struggled with each other. Said it all happened in front of their son, Trenton, and that once he was shot, both of them left the scene.

¶ 47        Taken as true and in the light most favorable to Defendant, this testimony is sufficient to support Defendant's request for a self-defense instruction as it shows Thomas pointing a gun at Defendant gave rise to his reasonable belief "that the conduct [was] necessary to defend himself . . . against [Thomas's] imminent use of unlawful force." N.C.G.S. § 14-51.3(a) (2019). Even though Thomas's testimony indicates Defendant became physical *before* she pointed the gun at him, the trial court was still obligated to instruct on self-defense. *See Moore*, 363 N.C. at 796, 688 S.E.2d at 449 (emphasis added) ("[I]f the defendant's evidence, taken as true, is sufficient to support an instruction for self-defense, it must be given *even though the State's evidence is contradictory*."). "With conflicting evidence, it was for the jury to

determine which individual was the initial aggressor." *State v. Parks*, 264 N.C. App. 112, 117, 824 S.E.2d 881, 885 (2019). The trial court erred by failing to include an instruction on self-defense in its final mandate to the jury. Defendant is entitled to a new trial if this error was prejudicial to him, such that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a) (2019).

¶ 48        Defendant relies on *State v. Gomola* to argue "the trial court's error in denying the requested instruction deprived the jury of the ability to assess whether [Defendant] acted lawfully." *See State v. Gomola*, 257 N.C. App. 816, 810 S.E.2d 797 (2018). In *Gomola*, we held the defendant was entitled to a new trial because "the lack of a self-defense/defense of others instruction deprived the jury of the ability to decide the issue of whether [the defendant's] participation in the altercation was lawful." *Id.* at 823, 810 S.E.2d at 803.

¶ 49        The lack of a self-defense instruction here similarly deprived the jury of the ability to decide the issue of whether Defendant's participation in the altercation was lawful. A determination by the jury that Defendant's participation was lawful could have compelled the jury to return a verdict of "not guilty," especially in light of the jury finding Defendant was not guilty of possession of a firearm. Defendant was prejudiced by the trial court's refusal to submit a self-defense instruction to the jury.

¶ 50        The evidence was sufficient to require the trial court to instruct the jury on

self-defense, and the trial court erred by failing to do so based on a lack of evidence. This error prejudiced Defendant. Having concluded the trial court erred in failing to instruct the jury on self-defense, "[t]he question remains whether the trial court's denial of [D]efendant's request for a[] [self-defense] instruction may be upheld as a sanction for [D]efendant's failure to provide adequate notice of his defense." *State v. Foster*, 235 N.C. App. 365, 376, 761 S.E.2d 208, 216 (2014).

**2. Refusal as a Sanction for a Discovery Violation**

In light of the determination that the evidence, when viewed in the light most favorable to Defendant, supports a jury instruction on self-defense, it must be addressed whether the trial court properly refused the instruction as a sanction for a discovery violation. The State argues "the trial court did not err by denying Defendant an instruction on self-defense because Defendant did not provide required notice" pursuant to N.C.G.S. § 15A-905.

If a defendant voluntarily provides discovery under N.C.G.S. § 15A-902(a), the defendant is required to comply with N.C.G.S. § 15A-905(c), and he must "[g]ive notice to the State of the intent to offer at trial a defense of . . . self-defense[.]" N.C.G.S. § 15A-905(c)(1) (2019); *see* N.C.G.S. § 15A-905(d) (2019). Here, Defendant agreed to voluntarily provide reciprocal discovery in compliance with N.C.G.S. § 15A-905. As a result, N.C.G.S. § 15A-905(c)(1) required Defendant to provide the State with notice of his intent to offer the defense of self-defense at trial "within 20 working

days after the date the case is set for trial." N.C.G.S. § 15A-905(c)(1) (2019). In this case, the trial court implicitly found Defendant violated N.C.G.S. § 15A-905(c)(1) because "there was no notice given of [an] affirmative defense[.]" It appears the trial court used this violation as part of its basis for its refusal to submit the issue of self-defense to the jury.

¶ 53       If a trial court determines that a defendant has violated N.C.G.S. § 15A-905(c)(1) by failing to provide advance notice of a defense, it may impose any of the following sanctions on a defendant:

> (1) Order the party to permit the discovery or inspection, or
>
> (2) Grant a continuance or recess, or
>
> (3) Prohibit the party from introducing evidence not disclosed, or
>
> (3a) Declare a mistrial, or
>
> (3b) Dismiss the charge, with or without prejudice, or
>
> (4) Enter other appropriate orders.

N.C.G.S. § 15A-910(a) (2019). We have previously treated a trial court's denial of a defendant's request for jury instructions as a sanction under N.C.G.S. § 15A-910(a)(3) when the defendant failed to provide notice, even when the trial court did not explicitly refer to the denial as a sanction. *See State v. Pender*, 218 N.C. App. 233, 243-44, 720 S.E.2d 836, 843, *disc. rev. denied, appeal dismissed*, 366 N.C. 233, 731

S.E.2d 414 (2012), *cert. dismissed*, 374 N.C. 264, 839 S.E.2d 845 (2020); *see also State v. Jones*, 260 N.C. App. 104, 107, 816 S.E.2d 921, 924 (2018) ("The sanction for failure to give notice of a defense of self-defense is normally exclusion of evidence upon the State's objection or refusal to give a jury instruction on self-defense."), *disc. rev. denied, cert. dismissed, appeal dismissed*, 372 N.C. 710, 831 S.E.2d 90 (2019). Just as in *Pender*, here, the trial court's denial of Defendant's request for a self-defense instruction is treated as a sanction for a discovery violation under N.C.G.S. § 15A-910(a)(3).

¶ 54      "Prior to finding any sanctions appropriate, the court shall consider both the materiality of the subject matter and the totality of the circumstances surrounding an alleged failure to comply with this Article or an order issued pursuant to this Article." N.C.G.S. § 15A-910(b) (2019). "If the court imposes any sanction, it must make specific findings justifying the imposed sanction." N.C.G.S. § 15A-910(d) (2019). "[T]he determination of whether to impose sanctions [is] solely within the discretion of the trial court." *State v. Jones*, 151 N.C. App. 317, 325, 566 S.E.2d 112, 117 (2002), *disc. rev. denied, appeal dismissed*, 356 N.C. 687, 578 S.E.2d 320, *cert. denied*, 540 U.S. 842, 157 L. Ed. 2d 76 (2003). "[T]he trial court's decision will only be reversed for an abuse of discretion upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *Id.* (marks omitted).

As explained by our Supreme Court, the rules of discovery

contained in the Criminal Procedure Act were enacted by the General Assembly to ensure, insofar as possible, that defendants receive a fair trial and not be taken by surprise. They were not enacted to serve as mandatory rules of exclusion for trivial defects in the State's mode of compliance. Despite the General Assembly's emphasis on protecting defendants from the State's noncompliance, such legislative intent does not give defendants *carte blanche* to violate discovery orders, but rather, defendants and defense counsel both must act in good faith, just as is required of their counterparts representing the State. Thus, the rules of discovery have been applied with equal force to both defendants and the State to ensure a fair trial and avoid unfair surprise for both parties.

*Foster,* 235 N.C. App. at 377, 761 S.E.2d at 217 (citations and marks omitted).

¶ 55        Presuming the trial court purported to deny Defendant's request for an instruction on self-defense as a sanction for Defendant's failure to provide the State with prior notice, it must be determined whether the trial court abused its discretion in imposing this sanction.

> [I]n considering the totality of the circumstances prior to imposing sanctions on a defendant, relevant factors for the trial court to consider include without limitation: (1) the defendant's explanation for the discovery violation including whether the discovery violation constituted willful misconduct on the part of the defendant or whether the defendant sought to gain a tactical advantage by committing the discovery violation, (2) the State's role, if any, in bringing about the violation, (3) the prejudice to the State resulting from the defendant's discovery violation, (4) the prejudice to the defendant resulting from the sanction, including whether the sanction could interfere with any fundamental rights of the defendant, and (5) the possibility of imposing a less severe sanction on the defendant.

*Id.* at 380-81, 761 S.E.2d at 219.

¶ 56          In this case, the trial court implicitly found that Defendant violated N.C.G.S. § 905(c)(1) because "there was no notice given of [an] affirmative defense" and, contrary to Defendant's position in his reply brief, our review of the Record indicates Defendant failed to give notice when required to do so. The trial court then used this violation as an additional basis for its refusal to submit the issue of self-defense to the jury. Presuming the trial court intended to deny the self-defense instruction as a sanction on the basis of a discovery violation, it made no specific findings "justifying the imposed sanction" to deny Defendant's requested instruction on self-defense in accordance with N.C.G.S. § 15A-910(d). N.C.G.S. § 15A-910(d) (2019). "The [trial] court simply found that [D]efendant failed to fully comply with the notice statute[,]" and "the [R]ecord suggests that the trial court [referred to the notice requirement] simply as an afterthought to bolster its decision not to instruct the jury on [self-defense]." *Foster,* 235 N.C. App. at 381, 761 S.E.2d at 219-220.

¶ 57          The lack of findings justifying the trial court's decision on Defendant's request for a jury instruction on self-defense was not the result of a reasoned decision. *See id.* at 381, 761 S.E.2d at 219 ("The procedure followed by the trial court, the failure to find prejudice, and the lack of findings are inconsistent with the [trial] court's ruling being a reasoned decision to further the purposes of the rules of discovery."); *see also State v. Barnett,* COA18-1183, 266 N.C. App. 140, 828 S.E.2d 754, 2019 WL

2505384 *8 (2019) (unpublished) ("Presuming *arguendo*, [the] [d]efendant's failure to provide the State with prior notice of [the] defense of [self-defense] could justify denying a jury instruction on the defense of [self-defense,] [i]t does not follow that the trial court could deny [the] [d]efendant's requested instruction on [self-defense] when the instruction is supported by the evidence viewed in the light most favorable to [the] [d]efendant."). The trial court abused its discretion in refusing to instruct the jury on self-defense when it failed to properly make findings and consider the appropriateness of the sanction for the failure of Defendant to provide notice of his intent to assert the defense of self-defense. Defendant is entitled to a new trial.

## **CONCLUSION**

¶ 58        Defendant preserved his arguments for appellate review by requesting that the trial court instruct the jury on self-defense before the jury was charged. Defendant presented sufficient evidence to warrant submission of the self-defense affirmative defense to the jury. Further, the trial court abused its discretion when precluding the self-defense jury instruction as a sanction for Defendant failing to provide notice of his intent to rely upon the self-defense affirmative defense. I would hold Defendant is entitled to a new trial based on these prejudicial errors. For these reasons, I respectfully dissent.