IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-500

 No. COA20-200

 Filed 21 September 2021

 Rockingham County, Nos. 17 CRS 050556-559, 18 CRS 000076

 STATE OF NORTH CAROLINA

 v.

 IVAN GERREN HOOPER

 Appeal by defendant from judgment entered 7 March 2018 by Judge Stanley

 L. Allen in Rockingham County Superior Court. Heard in the Court of Appeals 9

 March 2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Jasmine
 C. McGhee, for the State.

 Carella Legal Services, PLLC, by John F. Carella, for defendant-appellant.

 TYSON, Judge.

¶1 Ivan Gerren Hooper (“Defendant”) appeals from a judgment entered upon a

 jury’s verdicts finding him guilty of assault by strangulation, communicating threats,

 assault on a female, interfering with emergency communication, and attaining

 habitual felon status. We find no error.

 I. Background

¶2 On 5 March 2017, Reidsville Police Officer Scott Brown responded to a call
 STATE V. HOOPER

 2021-NCCOA-500

 Opinion of the Court

 placed by Ashley Thomas concerning an alleged assault, which had occurred at a

 Quality Inn Hotel the previous evening. Officer Brown met Thomas at her residence

 located on Wolf Island Road. Thomas stated she had an altercation with Defendant,

 the father of her child. Evidence tended to show Thomas arrived with their son,

 Trent, at Defendant’s hotel room at the Quality Inn on 4 March 2017. Following the

 altercation in the hotel room, Defendant had been shot. Thomas was visibly bruised

 and swollen across the bridge of her nose and eyes and displayed redness around her

 neck. Thomas also showed an open wound on her cheek, and scratches down her

 chest.

¶3 Defendant was indicted for assault by strangulation, possession of a firearm

 by felon, communicating threats, assault on a female, interfering with an emergency

 communication, and subsequently, with attaining the status of a habitual felon.

 Defendant failed to file a pre-trial notice to assert self-defense. See N.C. Gen. Stat. §

 15A-905(c)(1) (2019).

¶4 Thomas testified to her version of the events that unfolded at Defendant’s hotel

 room. Thomas testified when she arrived at Defendant’s hotel room with their son

 for visitation, Defendant began questioning Thomas regarding her personal

 relationship status. Defendant became agitated, punched, kneed, and threatened

 Thomas’ life. Thomas then kneed Defendant, which allowed Thomas to get up and

 retrieve her phone just before Defendant shattered it. Thomas turned to the TV
 STATE V. HOOPER

 2021-NCCOA-500

 Opinion of the Court

 stand, picked up [Defendant’s] gun, and discharged the gun towards the floor.

¶5 Defendant did not testify at trial. Reidsville Police Officer Jason Joyce, a

 witness for the State, testified about what Defendant had told him on 5 March 2017.

 Defendant told Officer Joyce he had advanced toward Thomas after he saw her with

 the firearm.

¶6 Defendant’s mother, Felicia Donnell, testified for Defendant regarding a phone

 call she had with Thomas shortly after the events had occurred in the hotel room.

 Donnell testified she was told no physical altercation had occurred until after the first

 shot was fired. Further testimony by other defense witnesses showed Thomas had

 acquired a gun prior to her visit to Defendant’s hotel room.

¶7 At the close of the State’s case and again at the close of all evidence, Defendant

 moved to dismiss for insufficiency of the evidence. Defense counsel argued Thomas

 had “provoked this particular action” and that it was a “defense mechanism” and that

 “he had to try to protect himself.” Both motions were denied. During the initial

 charge conference, the trial court presented and laid out the proposed jury

 instructions. Defendant did not request additional instructions or raise objections to

 the instructions the court intended to give. Counsel expressly agreed to the court’s

 tendered instructions.

¶8 The following day, immediately before the jury instructions were to be

 delivered, Defendant requested, for the first time, the jury be instructed on self-
 STATE V. HOOPER

 2021-NCCOA-500

 Opinion of the Court

 defense using the pattern jury instruction, entitled “Self-Defense-Assaults Not

 Involving Deadly Force.” N.C.P.I. -- Crim. 308.40 (2017). The State objected.

¶9 The trial court denied Defendant’s request, stating “there was no notice given

 of [an] affirmative defense.” The court further pointed out there was no evidence of

 what Defendant thought or believed about the need to defend himself and “there

 [was] no other evidence that . . . anything was done in self-defense.” After instructing

 the jury, the trial court again asked both the State and Defendant if there were any

 objections to the jury instructions. Both parties replied they had no objections to the

 instructions as given.

¶ 10 The jury found Defendant not guilty of possession of a firearm by a felon, but

 guilty of assault by strangulation, communicating threats, assault on a female,

 interfering with emergency communication, and having attained habitual felon

 status. Defendant’s convictions were consolidated, and he was sentenced to an active

 prison term of 65 to 90 months.

 II. Jurisdiction

¶ 11 Defendant failed to give timely notice of appeal. Defendant’s petition for writ

 of certiorari was allowed by this Court 27 August 2019 to review the judgment

 entered 7 March 2018. This Court possesses jurisdiction pursuant to N.C. Gen. Stat.

 § 15A-1444(g) (2019) and N.C. R. App. P. 21(a)(1).

 III. Issue
 STATE V. HOOPER

 2021-NCCOA-500

 Opinion of the Court

¶ 12 Defendant argues the trial court erred by denying his request for an instruction

 on self-defense.

 IV. Self-Defense Instruction

¶ 13 Defendant failed to file the statutorily required notice of intention to offer a

 defense of self-defense at trial. See N.C. Gen. Stat. § 15A-905(cv)(1) (“Give notice to

 the State of the intent to offer at trial a defense of . . . self-defense”). Defendant

 asserts sufficient evidence was presented to justify the trial court instructing the jury

 on self-defense.

¶ 14 During the jury charge conference, the trial court stated it was going to give:

 the usual [instructions]: function of the jury, burden of
 proof, and reasonable doubt, credibility of witnesses,
 weight of the evidence, effect of the Defendant’s decision
 not to testify.
 I had to pull it in from a civil volume, but it’s 101.41, that’s
 stipulations; 104.05, circumstantial evidence; 104.41,
 actual versus constructive possession; 104.50, be the
 photographs and the other things as illustrative evidence;
 105.20, impeachment or corroboration by a prior
 statement; 105.35, impeachment of a witness, other than
 the Defendant by proof of a crime; 120.10, definition of
 intent.
 And then, the substantive offenses, 208.61, assault
 inflicting physical injury by strangulation; 254A.11,
 possession of a firearm, it wouldn’t be a weapon of mass
 destruction by a felon; 208.70, assault on a female by a
 male person; 235.18, communicating threats; and 222.32,
 interfering with emergency communications; and then the
 final mandate.

 The trial court then asked of both the State and Defendant’s trial counsel: “Are there
 STATE V. HOOPER

 2021-NCCOA-500

 Opinion of the Court

 any requests for additional instructions or any objections to the instructions the Court

 is intending to give[?]” Defendant’s counsel responded, “Your Honor, I believe that

 the information that’s been articulate (sic) is accurate.”

¶ 15 During the jury charge conference, Defendant’s counsel never made additional

 requests, nor voiced any objection regarding the jury instructions proposed after he

 was specifically asked by the trial court. Defendant was provided the opportunity to

 object or correct these instructions and expressly agreed to the instructions to be

 given.

¶ 16 The day after the jury charge conference, just before jury deliberations,

 Defendant’s counsel mentioned self-defense for the first time and made the request

 for a self-defense instruction. The trial court recalled Defendant’s express agreement

 to the proffered instructions from the day prior, stating: “Well, you said yesterday you

 were satisfied with the instructions as the Court had outlined is going (sic) to give.”

¶ 17 After delivering the instructions to the jury, the trial court held the following

 colloquy:

 THE COURT: Now outside the presence of the jury, are
 there any requests for additional instructions or for
 corrections or any objections to the instructions given to the
 jury by– from the State?

 [THE STATE]: No, Your Honor.

 THE COURT: Or from the Defendant?
 STATE V. HOOPER

 2021-NCCOA-500

 Opinion of the Court

 [DEFENDANT’S COUNSEL]: No, Your Honor.

¶ 18 Defendant’s failure to object during the charge conference or after the

 instructions were given to the jury, along with his express agreement during the

 charge conference and after the instructions were given to the jury, constitutes

 invited error. His invited error waives any right to appellate review concerning the

 invited error, “including plain error review.” State v. Barber, 147 N.C. App. 69, 74,

 554 S.E.2d 413, 416 (2001) (emphasis supplied).

¶ 19 Our Supreme Court in State v. White examined a defendant’s counsel’s

 involvement in jury instructions in a death penalty case. State v. White, 349 N.C.

 535, 508 S.E.2d 253 (1998). The Court held:

 Counsel . . .did not object when given the opportunity either
 at the charge conference or after the charge had been given.
 In fact, defense counsel affirmatively approved the
 instructions during the charge conference. Where a
 defendant tells the trial court that he has no objection to
 an instruction, he will not be heard to complain on appeal.

 Id. at 570, 508 S.E.2d at 275 (citing State v. Wilkinson, 344 N.C. 198, 213, 474 S.E.2d

 375, 396 (1996)). The tardiness of Defendant’s purported request followed by his

 counsel’s express agreement following the jury instructions as given waives appellate

 review. Defendant’s argument is overruled.

 V. Prejudice

¶ 20 North Carolina’s statutes provide: “A defendant is not prejudiced by the
 STATE V. HOOPER

 2021-NCCOA-500

 Opinion of the Court

 granting of relief which he has sought or by error resulting from his own conduct.”

 N.C. Gen. Stat. § 15A-1443(c) (2019). Even if we agreed the trial court erred in

 denying Defendant’s requests regarding the self-defense, Defendant cannot carry his

 burden to show the court’s refusal of his requested instruction “had a probable impact

 on the jury’s finding that the defendant was guilty.” State v. Lawrence, 365 N.C. 506,

 517, 723 S.E.2d 326, 333 (2012) (citation omitted).

¶ 21 In State v. Chavez, our Supreme Court held:

 Where there is highly conflicting evidence in a case, an
 error in the jury instructions may tilt the scales and cause
 the jury to convict a defendant. In situations where the
 instructional error had a probable impact on the jury’s
 finding that the defendant was guilty, a defendant can
 show plain error. In contrast, where the evidence against a
 defendant is overwhelming and uncontroverted[, a]
 defendant cannot show that, absent the error, the jury
 probably would have returned a different verdict.

 State v. Chavez, __ N.C. __, __, 2021-NCSC-86, ¶13, 2021 WL 355039 at *4 (2021)

 (citations and quotation marks omitted). Defendant cannot show prejudice because

 the evidence against him was both “overwhelming and uncontroverted.” Id.

 VI. Conclusion

¶ 22 Defendant’s trial counsel’s active participation in the formulation and express

 agreement on the instructions forecloses appellate review on this issue, “including

 plain error review.” Barber, 147 N.C. App. at 74, 554 S.E.2d at 416. Defendant’s

 counsel’s express agreement to the instructions before and after they were given
 STATE V. HOOPER

 2021-NCCOA-500

 Opinion of the Court

 constitutes invited error and waives any right to appellate review concerning the

 invited error. White, 349 N.C. at 570, 508 S.E.2d at 275.

¶ 23 Presuming Defendant’s mother’s hearsay testimony of his phone call could be

 considered unasserted “self-defense,” in the face of “overwhelming and

 uncontroverted [evidence of guilt, a] defendant cannot show that, absent the error,

 the jury probably would have returned a different verdict.” Chavez, __ N.C. at __,

 2021-NCSC-86, ¶13, 2021 WL 355039 at *4.

¶ 24 Defendant received a fair trial, free from prejudicial errors he preserved or

 argued. We find no error in the jury’s verdicts or in the judgment entered thereon.

 It is so ordered.

 NO ERROR.

 Judge GORE concurs.

 Judge MURPHY dissents with separate opinion.
 No. COA20-200 – State v. Hooper

 MURPHY, Judge, dissenting.

¶ 25 The Majority incorrectly concludes “Defendant’s failure to object during the

 charge conference or after the instructions were given to the jury, along with his

 express agreement during the charge conference and after the instructions were

 given to the jury, constitutes invited error.” Supra at ¶ 18. In light of errors in the

 analysis to reach this conclusion, I respectfully dissent.

¶ 26 Additionally, while the Majority does not reach the merits of Defendant’s

 arguments, this dissent also encompasses the merits in the following sections. See

 N.C. R. App. P. 16(b) (2021) (“When the sole ground of the appeal of right is the

 existence of a dissent in the Court of Appeals, review by the Supreme Court is limited

 to a consideration of those issues that are (1) specifically set out in the dissenting

 opinion as the basis for that dissent[.]”).

 BACKGROUND

¶ 27 On 10 April 2017, Defendant, Ivan Gerren Hooper, was indicted for assault by

 strangulation, possession of firearm by felon, communicating threats, assault on a

 female, and interfering with an emergency communication. On 5 February 2018,

 Defendant was indicted for attaining the status of a habitual felon. Defendant’s trial

 began on 5 March 2018.

¶ 28 At trial, the evidence showed that on 4 March 2017, the mother of Defendant’s

 child, Ashley Thomas, arrived with their son, Trent, at Defendant’s hotel room at a

 Quality Inn. Subsequent events in the hotel room are disputed. However, following
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 the disputed events in the hotel room, Defendant had been shot, and Thomas had

 “apparent bruising and swelling across the bridge of her nose and eyes[,]” “bruising

 and red marks around both sides of her neck” and open wound scratches down her

 cheek and chest.

¶ 29 Thomas testified for the State. Thomas’s testimony at trial indicated that the

 following events occurred:

 [THOMAS:] When I first get into the hotel room, I sit my
 son down, and I sit down in the chair near the door. And
 [Defendant] says, “No, let me sit right here,” and I said–

 ....

 [THE STATE:] Okay. And– so what does [Defendant] say
 to you at that point?

 [THOMAS:] He asked me to let him sit right there at the
 chair by the door, and I said, “Why does it matter where I
 sit? I’m fine sitting right here.” “No, let me sit right here.”
 So I don’t move and he pulls up a chair directly in front of
 me in my face, and then he begins to question me about a
 guy that he assumed I had a relationship with.

 He saw his cousin at the store before he met me at the hotel
 room and his cousin was telling him, “Yeah, she been
 dealing with him,” blah, blah, blah, all this stuff like that.
 So then, he begins to question me about were we dealing
 and all this stuff, and I told him no. And so–

 ....

 [THOMAS:] I said, “Is this really why you called me here?”
 And then, he said, “Well honestly, I don’t care. I don’t want
 you anyway, so you can really dismiss yourself.” So I said,
 “Okay,” and as I proceed to stand up and grab for my child,
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

that’s when he gets in my face, and pushes me, and starts
punching me.

[THE STATE:] And where does he punch you?

[THOMAS:] He punches me in my face, in my stomach.

[THE STATE:] And what does he punch you with?

[THOMAS:] A closed fist.

[THE STATE:] Okay. And after you’re standing there and
he’s punching you in the face with his closed fist, what
transpires after that?

[THOMAS:] Then he takes me and slings me on the bed,
climbs on top of me, and starts continuously hitting me in
my face as I’m screaming, “Please don’t do this in front of
Trent,” like–

....

[THOMAS:] He’s punching me in the face, I’m trying to
shield my face. I put my knee up to kind of try to push him
off, and I’m screaming “Help,” you know, and “Oh, my God,”
and everything like that and he just continues.

....

[THE STATE:] Does [Defendant] say anything to you at
this point?

[THOMAS:] He says, “Nobody is going to be able to save
you, but Trent, and even he is not going to be able to save
you today. I’m going to kill you, [b----].”

....

[THE STATE:] And what else does, if anything, does he do
to you?
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

[THOMAS:] Then somehow we get up off the bed. I think
when I nudged him, we stood up, and that’s when he threw
me on the floor, climbed on top of me, and started choking
me.

[THE STATE:] And what is going on with you while he’s
choking you?

[THOMAS:] I feel myself about to lose consciousness like
my vision’s blurring, I can’t breathe, I can’t even scream.

[THE STATE:] And what is he choking you with?

[THOMAS:] His hands.

[THE STATE:] What happens after that?

[THOMAS:] After that, I think that’s when I kneed him in
his genital area and he finally got up. And I go directly
over to the mirror and look at my face, and I’m like, “Oh,
my God. I can’t believe you actually did this.” And then he
tells me, “Get back up on the bed and you gonna call this
[n----].”

And so, I grabbed for my phone and I looked and see my
uncle’s calling me as all of this is going on, and so, I try to
call him back. And then, he smacks my phone out of my
hand up against the wall and it shatters.

....

[THOMAS:] After he throws my phone, then that’s when
my attention is directed to the TV stand, and I see a
firearm sitting there. And the first thing that goes through
my head is “you’ve got to get this before he gets his hands
on it.” So I picked the gun up, and by this time I’m standing
facing the door. So my back is to the mirror, and the
bathroom, and all that.

And he grabs my son and puts my son in front of him like,
“Shoot me. You not gonna shoot me.” So then, I say,
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 “Trent, come here, baby,” and Trent runs over to me. And
 I say, “[Defendant], if you do not let me go, you leave me no
 choice but to shoot this gun.”

 And so, he act like he’s going to lunge at me, so I pull the
 trigger, and the gun is pointed down towards the floor. And
 he said, “I’ve been shot, (inaudible) I’ve been shot.” And I
 didn’t know that he’d been shot because I didn’t aim
 towards his head, his arms, nothing. I pointed directly to
 the floor.

 So then, he jumps over and he grabs my hand because my
 hand is on the gun, and he’s like, “Let the gun go. Let the
 gun go.” I said, “No, I’m not going to let the gun go, so you
 can do what you already planned to do.” And he says,
 “Well, we’ll let it go at the same time.” And I said, “No, I’m
 not letting it go.” And he says, “Well, if I let it go, can I
 leave with you?”

 I said, “Sure,” anything so he would get off of me, so I could
 have my chance to get out. So when he lets go, I grab my
 son, I still have the gun in my hand, and I run out and get
 in my car.

¶ 30 Defendant did not testify at trial. However, Officer Jason Joyce, a witness for

 the State, testified about what Defendant told him on 5 March 2017:

 [OFFICER JOYCE:] . . . . Myself and my lieutenant,
 Lieutenant Osborne, we spoke to [Defendant] in Room 101.
 He advised that on [4 March 2017] at about 6:00 PM, his–
 the mother of his child, Ashley Thomas, and their child,
 Trenton Thomas, came to the Quality Inn, I’m sorry, came
 to the Quality Inn, Room 101 at the Quality Inn.

 [THE STATE:] And what did he tell you about that
 incident?

 [OFFICER JOYCE:] [Defendant] stated the conversation
 turned into an argument with [] Thomas, and [] Thomas
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 pulled a gun out on him and shot him in the leg.

 [THE STATE:] Did he say anything else?

 [OFFICER JOYCE:] Stated that when he saw the firearm,
 he advanced towards her and tried to get the firearm from
 her, and that they struggled with each other. Said it all
 happened in front of their son, Trenton, and that once he
 was shot, both of them left the scene.

 [THE STATE:] And did he tell you anything about what
 this argument was about or anything?

 [OFFICER JOYCE:] No, he did not.

 [THE STATE:] Did he tell you anything else that led up to
 him being shot?

 [OFFICER JOYCE:] He stated that he was staying at the
 hotel to get away from people because of a death in the
 family. I asked him why he waited so long to report the
 shooting, and he stated he went to a friend of his house
 (sic), who was in the medical field, and they treated him.
 And he passed out because he had never been shot before.

¶ 31 Defendant’s mother, Felicia Donnell, testified for Defendant. According to

 Donnell, Thomas called her after 4 p.m. on 4 March 2017 and recounted what

 happened in the hotel room:

 [DONNELL:] When [Thomas] called me, I could tell that
 she was very upset, so I asked her what was going on. And
 she just told me, “I shot him. I shot your son.”

 [DEFENSE COUNSEL:] And–

 [DONNELL:] Then I asked her to please tell me what went
 on, what took place, you know, for her to shoot him. So she
 went on to explain briefly that she went to where he was
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

staying at that time. And honestly until this time, I didn’t
know it was a Days Inn, or a friend’s home, or where he
was that particular day.

But anyway, she let me know that she was fearing for her
life and that she had a gun, and she and [Defendant] were
standing in front of one another. And at that point, she
said she had it pointed at him, and she asked him,
“[Defendant], are you going to kill me?” And [Defendant]
said– (inaudible) [Defendant] said to me (sic), “Give me the
gun.” And she said, “[Defendant], are you going to kill me?”
He said, “[Thomas], give me the gun.”

And then, a shot was fired, a scuffle happened, and then a
fire, you know, a bullet happened again, and he looked
down at his leg, is what she told me. I said, “You shot him
in his leg?” And she said, “Yes.” And she said that he
looked down at his leg because they could see some blood
and he said, “You shot me. You shot me.”

So after that, I’m honest, I don’t know what went down
after that, but my main question was to [Thomas], “You left
[your son] at your mom’s home, right, when you went to see
[Defendant]?” And she said, “No, he was there.” And I
said, “He could have been hurt,” because I had told her on
[3 March] while I was at the airport, “do not go over to see
[Defendant] under any circumstances. Just stay away
from him.” So I was shocked to get that phone call that
she– when she called me on Saturday[.]

....

[DEFENSE COUNSEL:] And– so, [] Donnell, from what
was conveyed to you, was it the fact that there was a scuffle
after the weapon was fired?

[DONNELL:] A shot was fired, and then a scuffle
happened. She told me exactly what happened. I said,
“What did he do to you?” And she let me know that he did
strangle her and that he punched her, but then a second
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 fire happened at some point and that’s when, I think, both
 of– and I’m saying “think,” but she told me that they were
 standing because both of them looked down at his leg. She
 didn’t tell me which leg it was and they saw the blood–

 ....

 [DEFENSE COUNSEL:] Okay. And so, you said based on
 that component is that there was no physical altercation
 until after the first shot was fired?

 [DONNELL:] After a shot was fired.

 ....

 [THE STATE:] And [] Thomas told you that she was
 strangled?

 [DONNELL:] Uh-huh, after she fired the first shot, they
 got into that altercation.

¶ 32 At the close of the State’s evidence, and again at the close of all evidence,

 Defendant made motions to dismiss for insufficiency of the evidence, arguing the

 evidence showed Defendant was acting to defend himself. Both motions were denied.

¶ 33 During the initial charge conference, Defendant indicated he was satisfied with

 the jury instructions. The following day, immediately before the jury instructions

 were delivered, Defendant requested, for the first time, the jury be instructed on self-

 defense using a pattern jury instruction entitled “Self-Defense—Assaults Not

 Involving Deadly Force.” N.C.P.I.—Crim. 308.40 (2017). The State objected, noting

 “there was no notice provided that he intended to seek . . . any sort of defense, which

 he’s required to do.” The trial court denied Defendant’s request, stating “there was
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 no notice given of [an] affirmative defense,” and “there [was] no other evidence that .

 . . anything was done in self-defense.”

¶ 34 The jury found Defendant not guilty of possession of a firearm by a felon and

 guilty of assault by strangulation, communicating threats, assault on a female, and

 interfering with an emergency communication. The jury also found Defendant guilty

 of having attained habitual felon status. A judgment was entered on 7 March 2018,

 sentencing Defendant to an active sentence of 65 to 90 months. Defendant did not

 give an oral notice of appeal in open court. However, on 30 August 2019, we allowed

 his Petition for Writ of Certiorari for the purpose of reviewing the judgment entered

 on 7 March 2018.

 ANALYSIS

 A. Preservation

¶ 35 Our Rules of Appellate Procedure provide as a general rule that “[i]n order to

 preserve an issue for appellate review, a party must have presented to the trial court

 a timely request, objection, or motion, stating the specific grounds for the ruling the

 party desired the [trial] court to make if the specific grounds were not apparent from

 the context.” N.C. R. App. P. 10(a)(1) (2021). Regarding the preservation of jury

 instructions, the rules state:

 A party may not make any portion of the jury charge or
 omission therefrom the basis of an issue presented on
 appeal unless the party objects thereto before the jury
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 retires to consider its verdict, stating distinctly that to
 which objection is made and the grounds of the objection;
 provided that opportunity was given to the party to make
 the objection out of the hearing of the jury, and, on request
 of any party, out of the presence of the jury.

 N.C. R. App. P. 10(a)(2) (2021). “For the purposes of Rule 10(a)(2), a request for

 instructions constitutes an objection.” State v. Rowe, 231 N.C. App. 462, 469, 752

 S.E.2d 223, 227 (2013).

¶ 36 Here, the following colloquy occurred following the charge conference and

 before the jury was charged:

 THE COURT: All right, Sheriff, bring the jury in, please.

 [DEFENSE COUNSEL]: Your Honor, may I have just one
 moment?

 THE COURT: Yes.

 ....

 [DEFENSE COUNSEL]: Your Honor, I think it’s
 reasonable based on information that has been presented
 that the– that self-defense component in this particular
 jury instruction would be appropriate, as well, [as] the
 308.40 to be elicited here in this particular matter.

 Also secondly with that, Your Honor, I do have a case to
 hand up. I think that would be reflective of that, as well,
 based on the evidence that has been presented at this time.

 THE COURT: Okay. Well, you said yesterday you were
 satisfied with the instructions as the [c]ourt had outlined
 [it] is going to give.

 [DEFENSE COUNSEL]: And Your Honor, (inaudible) back
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 where we started in that component, so I wanted to make
 sure that (inaudible) would be appropriate, Your Honor.

 THE COURT: And you want to be heard further?

 [DEFENSE COUNSEL]: Yes, Your Honor. Simply as we
 look at this particular matter, the State v. Jennings, this is
 276 NC 157. This particular matter, as it reflects to a
 slightly more serious– it’s a murder allegation, but still
 when it reflects what takes place with a self-defense
 proposition, that should be provided to the jurors. The
 piece here, I think, that falls in line with this particular
 matter is that obviously whatever has been charged,
 whatever was done, the fact still remains that this
 particular matter that’s in front of the [trial court] today,
 it is most appropriate that this particular test here for self-
 defense should be appropriated– is appropriate and should
 be provided to the jurors.

 With that, the actions that were done, the timeliness of the
 actions, all of those components are supported and would
 be prudent to make sure that the jurors are aware of this
 particular action that will be most beneficial, I think, in
 this matter.

 ....

 THE COURT: Well, I have to agree with the State. The
 notice– there was no notice given of affirmative defense,
 and because that– and because we don’t know what was in
 [] Defendant’s mind because he exercised his constitutional
 right not to testify, we don’t know what he was thinking or
 what he believed. And there’s been no other evidence that
 this was a– anything was done in self-defense. The request
 for a self-defense instruction is denied.

 Bring the jury in, please, Sheriff.

¶ 37 “As Defendant specifically requested the trial court to include a jury
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 instruction on [self-defense] and argued that point before the [trial] court, . . . he

 properly preserved this issue for appellate review.” Id. at 469-70, 752 S.E.2d at 228.

¶ 38 The Majority relies on State v. White, 349 N.C. 535, 508 S.E.2d 253 (1998), cert.

 denied, 527 U.S. 1026, 144 L. Ed. 2d 779 (1999), to conclude “[t]he tardiness of

 Defendant’s purported request followed by his counsel’s express agreement following

 the jury instructions as given waives appellate review.” Supra at ¶ 19. In White, the

 defense counsel requested that the trial court give peremptory instructions to the jury

 regarding nonstatutory mitigating circumstances. White, 349 N.C. at 568, 508 S.E.2d

 at 274. However, the defense counsel cited the pattern instruction for the peremptory

 instruction only for statutory mitigating circumstances, not for nonstatutory

 mitigating circumstances. Id. at 569, 508 S.E.2d at 274. When the trial court

 clarified the language it would use in the jury instruction, the defense counsel agreed.

 Id. Our Supreme Court observed:

 [The] [d]efense counsel thus agreed with this proposed
 language, made no objection to it, and neither suggested
 nor provided any other language either orally or in writing.
 Thereafter, the trial court instructed the jury exactly as it
 had indicated. [The] [d]efense counsel did not object at this
 point either, though given the opportunity.

 ....

 [The] defense counsel did not submit any proposed
 instructions in writing. Counsel also did not object when
 given the opportunity either at the charge conference or
 after the charge had been given. In fact, [the] defense
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 counsel affirmatively approved the instructions during the
 charge conference. Where a defendant tells the trial court
 that he has no objection to an instruction, he will not be
 heard to complain on appeal.

 Id. at 569-70, 508 S.E.2d at 274-75.

¶ 39 White is distinguishable from the facts of the present case because here, while

 Defendant did not say the words “I object” after the charge had been given, his

 “request for instructions constitutes an objection.” Rowe, 231 N.C. App. at 469, 752

 S.E.2d at 227. Further, Defendant’s request for a self-defense jury instruction was

 denied, whereas in White, the trial court instructed the jury based on the instruction

 the defense counsel requested and the proposed language they agreed to.1 White, 349

 1 Although the defendant in White also requested an instruction, the request for an

 instruction there could not constitute an objection. Where a request for instructions is
 granted and the defendant approves the language used in the instruction, like in White, a
 request for instructions cannot constitute an objection, as there is no longer anything for a
 defendant to object to. See State v. Roache, 358 N.C. 243, 296, 595 S.E.2d 381, 415 (2004)
 (citations omitted) (“The trial court sustained [the] defendant’s objections to the questions
 specifically addressed by [the] defendant in his brief to this Court. This Court will not review
 the propriety of questions for which the trial court sustained a defendant’s objection absent
 a further request being denied by the [trial] court. No prejudice exists, for when the trial
 court sustains an objection to a question the jury is put on notice that it is not to consider
 that question. Accordingly, any error alleged by [the] defendant to result from these
 questions is not properly before the Court, and regardless would not have resulted in
 prejudice.”). In order for a request for an instruction to constitute an objection in this context,
 there would need to be a subsequent request for the instruction or a formal objection to the
 instructions. See id.; but see State v. Ross, 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988) (“[A]
 request for an instruction at the charge conference is sufficient compliance with [Rule 10] to
 warrant our full review on appeal where the requested instruction is subsequently promised
 but not given, notwithstanding any failure to bring the error to the trial judge’s attention at
 the end of the instructions.”).
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 N.C. at 568-70, 508 S.E.2d at 274-75. Under our precedent in Rowe, Defendant did

 not waive appellate review. “The fact that [Defense] [C]ounsel did not say the words

 ‘I object’ is not reason to deny appellate review . . . .” Id. at 470, 752 S.E.2d at 228.

 B. Merits of Defendant’s Argument

¶ 40 Defendant argues the trial court erred in denying his request for an instruction

 on self-defense because there is “conflicting evidence regarding what happened at the

 Quality Inn, [and] when viewed in the light most favorable to [Defendant], [the

 evidence] supported an instruction on self-defense.” The State argues the trial court

 did not err in denying Defendant an instruction on self-defense because (1) Defendant

 “did not present competent evidence of self-defense” and (2) “Defendant did not

 provide required notice.” Defendant also argues that, to the extent the trial court’s

 denial of his requested self-defense instruction was a sanction for failure to comply

 with the discovery statutes, “the trial court did not make the ‘specific findings’ that

 would be required for it to bar a jury instruction as a discovery sanction.”

¶ 41 It would only have been proper for the trial court to refuse the self-defense

 instruction here if there was not sufficient evidence, when viewed in the light most

 favorable to Defendant, to support the instruction, and/or if the trial court used the

 refusal of the instruction as a sanction for Defendant’s discovery violation.

 1. Sufficient Evidence of Self-Defense

¶ 42 Defendant argues “[t]he evidence that [] Thomas possessed a gun and initiated
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 the struggle by aiming the gun at [Defendant] was sufficient to entitle [him] to the

 requested self-defense instruction, and there was a reasonable possibility the

 outcome would have been different had the jury been fully instructed.” We review a

 trial court’s decision regarding jury instructions de novo. State v. Osorio, 196 N.C.

 App. 458, 466, 675 S.E.2d 144, 149 (2009).

¶ 43 “[W]here competent evidence of self-defense is presented at trial, the defendant

 is entitled to an instruction on this defense, as it is a substantial and essential feature

 of the case[.]” State v. Morgan, 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986) (emphasis

 omitted). “In determining whether there was any evidence of self-defense presented,

 the evidence must be interpreted in the light most favorable to [the] defendant.” State

 v. Webster, 324 N.C. 385, 391, 378 S.E.2d 748, 752 (1989). “Where there is evidence

 that [the] defendant acted in self-defense, the [trial] court must charge on this aspect

 even though there is contradictory evidence by the State or discrepancies in [the]

 defendant’s evidence.” State v. Dooley, 285 N.C. 158, 163, 203 S.E.2d 815, 818 (1974);

 see State v. Moore, 363 N.C. 793, 796, 688 S.E.2d 447, 449 (2010) (“[I]f the defendant’s

 evidence, taken as true, is sufficient to support an instruction for self-defense, it must

 be given even though the State’s evidence is contradictory.”).

¶ 44 “[A]n error in jury instructions is prejudicial and requires a new trial only if

 there is a reasonable possibility that, had the error in question not been committed,

 a different result would have been reached at the trial out of which the appeal arises.”
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 State v. Locklear, 259 N.C. App. 374, 377, 816 S.E.2d 197, 201 (2018) (marks omitted);

 see also N.C.G.S. § 15A-1443(a) (2019). “The burden of showing such prejudice . . . is

 upon the defendant.” N.C.G.S. § 15A-1443(a) (2019).

¶ 45 N.C.G.S. § 14-51.3 provides a defendant who uses non-deadly force to defend

 himself will be immune from criminal liability:

 (a) A person is justified in using force, except deadly force,
 against another when and to the extent that the person
 reasonably believes that the conduct is necessary to defend
 himself or herself or another against the other’s imminent
 use of unlawful force. . . .

 (b) A person who uses force as permitted by this section is
 justified in using such force and is immune from civil or
 criminal liability for the use of such force . . . .

 N.C.G.S. § 14-51.3 (2019).

¶ 46 Here, the evidence presented at trial, when interpreted in the light most

 favorable to Defendant, is sufficient to entitle him to a jury instruction on self-

 defense. Specifically, Donnell testified Thomas told her the timeline of events was

 that Thomas first fired the gun, then Defendant became physical with Thomas, then

 Thomas fired another shot:

 [DEFENSE COUNSEL:] Okay. And so, you said based on
 that component is that there was no physical altercation
 until after the first shot was fired?

 [DONNELL:] After a shot was fired.

 ....
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 [THE STATE:] And [] Thomas told you that she was
 strangled?

 [DONNELL:] Uh-huh, after she fired the first shot, they
 got into that altercation.

 Officer Joyce’s testimony corroborates Donnell’s testimony:

 [OFFICER JOYCE:] [Defendant] stated the conversation
 turned into an argument with [] Thomas, and [] Thomas
 pulled a gun out on him and shot him in the leg.

 [THE STATE:] Did he say anything else?

 [OFFICER JOYCE:] Stated that when he saw the firearm,
 he advanced towards her and tried to get the firearm from
 her, and that they struggled with each other. Said it all
 happened in front of their son, Trenton, and that once he
 was shot, both of them left the scene.

¶ 47 Taken as true and in the light most favorable to Defendant, this testimony is

 sufficient to support Defendant’s request for a self-defense instruction as it shows

 Thomas pointing a gun at Defendant gave rise to his reasonable belief “that the

 conduct [was] necessary to defend himself . . . against [Thomas’s] imminent use of

 unlawful force.” N.C.G.S. § 14-51.3(a) (2019). Even though Thomas’s testimony

 indicates Defendant became physical before she pointed the gun at him, the trial court

 was still obligated to instruct on self-defense. See Moore, 363 N.C. at 796, 688 S.E.2d

 at 449 (emphasis added) (“[I]f the defendant’s evidence, taken as true, is sufficient to

 support an instruction for self-defense, it must be given even though the State’s

 evidence is contradictory.”). “With conflicting evidence, it was for the jury to
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 determine which individual was the initial aggressor.” State v. Parks, 264 N.C. App.

 112, 117, 824 S.E.2d 881, 885 (2019). The trial court erred by failing to include an

 instruction on self-defense in its final mandate to the jury. Defendant is entitled to

 a new trial if this error was prejudicial to him, such that “there is a reasonable

 possibility that, had the error in question not been committed, a different result

 would have been reached at the trial.” N.C.G.S. § 15A-1443(a) (2019).

¶ 48 Defendant relies on State v. Gomola to argue “the trial court’s error in denying

 the requested instruction deprived the jury of the ability to assess whether

 [Defendant] acted lawfully.” See State v. Gomola, 257 N.C. App. 816, 810 S.E.2d 797

 (2018). In Gomola, we held the defendant was entitled to a new trial because “the

 lack of a self-defense/defense of others instruction deprived the jury of the ability to

 decide the issue of whether [the defendant’s] participation in the altercation was

 lawful.” Id. at 823, 810 S.E.2d at 803.

¶ 49 The lack of a self-defense instruction here similarly deprived the jury of the

 ability to decide the issue of whether Defendant’s participation in the altercation was

 lawful. A determination by the jury that Defendant’s participation was lawful could

 have compelled the jury to return a verdict of “not guilty,” especially in light of the

 jury finding Defendant was not guilty of possession of a firearm. Defendant was

 prejudiced by the trial court’s refusal to submit a self-defense instruction to the jury.

¶ 50 The evidence was sufficient to require the trial court to instruct the jury on
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 self-defense, and the trial court erred by failing to do so based on a lack of evidence.

 This error prejudiced Defendant. Having concluded the trial court erred in failing to

 instruct the jury on self-defense, “[t]he question remains whether the trial court’s

 denial of [D]efendant’s request for a[] [self-defense] instruction may be upheld as a

 sanction for [D]efendant’s failure to provide adequate notice of his defense.” State v.

 Foster, 235 N.C. App. 365, 376, 761 S.E.2d 208, 216 (2014).

 2. Refusal as a Sanction for a Discovery Violation

¶ 51 In light of the determination that the evidence, when viewed in the light most

 favorable to Defendant, supports a jury instruction on self-defense, it must be

 addressed whether the trial court properly refused the instruction as a sanction for a

 discovery violation. The State argues “the trial court did not err by denying

 Defendant an instruction on self-defense because Defendant did not provide required

 notice” pursuant to N.C.G.S. § 15A-905.

¶ 52 If a defendant voluntarily provides discovery under N.C.G.S. § 15A-902(a), the

 defendant is required to comply with N.C.G.S. § 15A-905(c), and he must “[g]ive

 notice to the State of the intent to offer at trial a defense of . . . self-defense[.]”

 N.C.G.S. § 15A-905(c)(1) (2019); see N.C.G.S. § 15A-905(d) (2019). Here, Defendant

 agreed to voluntarily provide reciprocal discovery in compliance with N.C.G.S. § 15A-

 905. As a result, N.C.G.S. § 15A-905(c)(1) required Defendant to provide the State

 with notice of his intent to offer the defense of self-defense at trial “within 20 working
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 days after the date the case is set for trial.” N.C.G.S. § 15A-905(c)(1) (2019). In this

 case, the trial court implicitly found Defendant violated N.C.G.S. § 15A-905(c)(1)

 because “there was no notice given of [an] affirmative defense[.]” It appears the trial

 court used this violation as part of its basis for its refusal to submit the issue of self-

 defense to the jury.

¶ 53 If a trial court determines that a defendant has violated N.C.G.S. § 15A-

 905(c)(1) by failing to provide advance notice of a defense, it may impose any of the

 following sanctions on a defendant:

 (1) Order the party to permit the discovery or inspection,
 or

 (2) Grant a continuance or recess, or

 (3) Prohibit the party from introducing evidence not
 disclosed, or

 (3a) Declare a mistrial, or

 (3b) Dismiss the charge, with or without prejudice, or

 (4) Enter other appropriate orders.

 N.C.G.S. § 15A-910(a) (2019). We have previously treated a trial court’s denial of a

 defendant’s request for jury instructions as a sanction under N.C.G.S. § 15A-910(a)(3)

 when the defendant failed to provide notice, even when the trial court did not

 explicitly refer to the denial as a sanction. See State v. Pender, 218 N.C. App. 233,

 243-44, 720 S.E.2d 836, 843, disc. rev. denied, appeal dismissed, 366 N.C. 233, 731
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 S.E.2d 414 (2012), cert. dismissed, 374 N.C. 264, 839 S.E.2d 845 (2020); see also State

 v. Jones, 260 N.C. App. 104, 107, 816 S.E.2d 921, 924 (2018) (“The sanction for failure

 to give notice of a defense of self-defense is normally exclusion of evidence upon the

 State’s objection or refusal to give a jury instruction on self-defense.”), disc. rev.

 denied, cert. dismissed, appeal dismissed, 372 N.C. 710, 831 S.E.2d 90 (2019). Just

 as in Pender, here, the trial court’s denial of Defendant’s request for a self-defense

 instruction is treated as a sanction for a discovery violation under N.C.G.S. § 15A-

 910(a)(3).

¶ 54 “Prior to finding any sanctions appropriate, the court shall consider both the

 materiality of the subject matter and the totality of the circumstances surrounding

 an alleged failure to comply with this Article or an order issued pursuant to this

 Article.” N.C.G.S. § 15A-910(b) (2019). “If the court imposes any sanction, it must

 make specific findings justifying the imposed sanction.” N.C.G.S. § 15A-910(d)

 (2019). “[T]he determination of whether to impose sanctions [is] solely within the

 discretion of the trial court.” State v. Jones, 151 N.C. App. 317, 325, 566 S.E.2d 112,

 117 (2002), disc. rev. denied, appeal dismissed, 356 N.C. 687, 578 S.E.2d 320, cert.

 denied, 540 U.S. 842, 157 L. Ed. 2d 76 (2003). “[T]he trial court’s decision will only

 be reversed for an abuse of discretion upon a showing that its ruling was so arbitrary

 that it could not have been the result of a reasoned decision.” Id. (marks omitted).

 As explained by our Supreme Court, the rules of discovery
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 contained in the Criminal Procedure Act were enacted by
 the General Assembly to ensure, insofar as possible, that
 defendants receive a fair trial and not be taken by surprise.
 They were not enacted to serve as mandatory rules of
 exclusion for trivial defects in the State’s mode of
 compliance. Despite the General Assembly’s emphasis on
 protecting defendants from the State’s noncompliance,
 such legislative intent does not give defendants carte
 blanche to violate discovery orders, but rather, defendants
 and defense counsel both must act in good faith, just as is
 required of their counterparts representing the State.
 Thus, the rules of discovery have been applied with equal
 force to both defendants and the State to ensure a fair trial
 and avoid unfair surprise for both parties.

 Foster, 235 N.C. App. at 377, 761 S.E.2d at 217 (citations and marks omitted).

¶ 55 Presuming the trial court purported to deny Defendant’s request for an

 instruction on self-defense as a sanction for Defendant’s failure to provide the State

 with prior notice, it must be determined whether the trial court abused its discretion

 in imposing this sanction.

 [I]n considering the totality of the circumstances prior to
 imposing sanctions on a defendant, relevant factors for the
 trial court to consider include without limitation: (1) the
 defendant’s explanation for the discovery violation
 including whether the discovery violation constituted
 willful misconduct on the part of the defendant or whether
 the defendant sought to gain a tactical advantage by
 committing the discovery violation, (2) the State’s role, if
 any, in bringing about the violation, (3) the prejudice to the
 State resulting from the defendant’s discovery violation, (4)
 the prejudice to the defendant resulting from the sanction,
 including whether the sanction could interfere with any
 fundamental rights of the defendant, and (5) the possibility
 of imposing a less severe sanction on the defendant.
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 Id. at 380-81, 761 S.E.2d at 219.

¶ 56 In this case, the trial court implicitly found that Defendant violated N.C.G.S.

 § 905(c)(1) because “there was no notice given of [an] affirmative defense” and,

 contrary to Defendant’s position in his reply brief, our review of the Record indicates

 Defendant failed to give notice when required to do so. The trial court then used this

 violation as an additional basis for its refusal to submit the issue of self-defense to

 the jury. Presuming the trial court intended to deny the self-defense instruction as a

 sanction on the basis of a discovery violation, it made no specific findings “justifying

 the imposed sanction” to deny Defendant’s requested instruction on self-defense in

 accordance with N.C.G.S. § 15A-910(d). N.C.G.S. § 15A-910(d) (2019). “The [trial]

 court simply found that [D]efendant failed to fully comply with the notice statute[,]”

 and “the [R]ecord suggests that the trial court [referred to the notice requirement]

 simply as an afterthought to bolster its decision not to instruct the jury on [self-

 defense].” Foster, 235 N.C. App. at 381, 761 S.E.2d at 219-220.

¶ 57 The lack of findings justifying the trial court’s decision on Defendant’s request

 for a jury instruction on self-defense was not the result of a reasoned decision. See

 id. at 381, 761 S.E.2d at 219 (“The procedure followed by the trial court, the failure

 to find prejudice, and the lack of findings are inconsistent with the [trial] court’s

 ruling being a reasoned decision to further the purposes of the rules of discovery.”);

 see also State v. Barnett, COA18-1183, 266 N.C. App. 140, 828 S.E.2d 754, 2019 WL
 STATE V. HOOPER

 2021-NCCOA-500

 MURPHY, J., dissenting.

 2505384 *8 (2019) (unpublished) (“Presuming arguendo, [the] [d]efendant’s failure to

 provide the State with prior notice of [the] defense of [self-defense] could justify

 denying a jury instruction on the defense of [self-defense,] [i]t does not follow that the

 trial court could deny [the] [d]efendant’s requested instruction on [self-defense] when

 the instruction is supported by the evidence viewed in the light most favorable to [the]

 [d]efendant.”). The trial court abused its discretion in refusing to instruct the jury on

 self-defense when it failed to properly make findings and consider the

 appropriateness of the sanction for the failure of Defendant to provide notice of his

 intent to assert the defense of self-defense. Defendant is entitled to a new trial.

 CONCLUSION

¶ 58 Defendant preserved his arguments for appellate review by requesting that

 the trial court instruct the jury on self-defense before the jury was charged.

 Defendant presented sufficient evidence to warrant submission of the self-defense

 affirmative defense to the jury. Further, the trial court abused its discretion when

 precluding the self-defense jury instruction as a sanction for Defendant failing to

 provide notice of his intent to rely upon the self-defense affirmative defense. I would

 hold Defendant is entitled to a new trial based on these prejudicial errors. For these

 reasons, I respectfully dissent.